## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                              No. CR 11-0904 JB

LAURIE CHAPMAN,

      Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's First Opposed Motion to Continue Sentencing with Supporting Authorities, filed January 17, 2012 (Doc. 37)("First Opposed Motion"). The Court held a hearing on January 30, 2012. The primary issues are: (i) whether the Court should provide Defendant Laurie Chapman with additional time to file objections to the Presentence Investigation Report, disclosed October 19, 2011 ("PSR"); and (ii) whether the Court should vacate Chapman's sentencing hearing to give her additional time to provide her financial information and a psychological report to the United States Probation Office ("USPO"). The Court will grant the First Opposed Motion in part and deny it in part. For the reasons stated on the record, and because the Court believes the requested continuance is appropriate to allow Chapman to adequately present her case, the Court will permit a continuance of the sentencing hearing until March 6, 2012. The Court will require the parties to file informal objections to the Presentence Investigation Report, disclosed October 19, 2011 ("PSR"), within seven days from the date of the January 30, 2012 hearing and formal objections to the PSR within fourteen days of the January 30, 2012 hearing.

## PROCEDURAL BACKGROUND

The USPO disclosed a Presentence Investigation Report ("PSR") for Chapman on October 19, 2011.  On November 11, 2011, Chapman filed an Unopposed Motion to Continue Sentencing.  See Doc. 30.  The Court entered an order on November 20, 2011 granting that motion and resetting the sentencing hearing for December 2, 2011.  See Order Granting Unopposed Motion to Continue Sentencing (Doc. 31).  On November 18, 2011, Chapman filed her Second Unopposed Motion to Continue Sentencing.  See Doc. 32.  The Court entered an order on November 22, 2011 granting that motion and resetting the sentencing hearing for February 7, 2012.  See Order Granting Second Unopposed Motion to Continue Sentencing (Doc. 34).

On January 17, 2012, Chapman filed her First Opposed Motion seeking a continuance.  She did not request a specific time for a continuance, but requested that the Court "continue the Sentencing set for February 7, 2012 at 1:30 p.m. to a later date."  First Opposed Motion at 1.  She notes that she "is collecting the information which was requested by the U.S. Probation Office pursuant to Rule 32(d)(2) of the" Federal Rules of Criminal Procedure.  First Opposed Motion at 2.  She notes that, once the USPO receives this information, it will submit an addendum to the PSR.  See First Opposed Motion at 2.  She states that the parties will begin the objection process once the USPO files any addendums.  See First Opposed Motion at 2.  She asserts that her informal objections, formal objections, and sentencing memorandum "cannot be prepared and filed by February 7, 2012."  First Opposed Motion at 2-3.  Plaintiff United States of America opposes this motion on the basis that any additional information Chapman needs to provide to the USPO will not affect her guideline calculation.  See United States' Response in Opposition to Defendant's Motion to Continue February 7, 2012 Sentencing (Doc. 37), filed January 26, 2012 (Doc. 38).

At the hearing on January 30, 2012, the Court stated that its inclination, after reading the

-2-

PSR, was to permit a continuance.  <u>See</u> Transcript of Hearing at 3:4-17 (taken January 30, 2012)(Court)("Tr.").[1]  The Court noted that, based on potential changes to the PSR that relate to Chapman's financial circumstances, she could make a plausible argument that she has been spending a lot of money on dealing with her son's drug problems.  <u>See</u> Tr. at 3:4-17 (Court).  The Court noted that, while it appeared she had been spending a significant amount of money on her son and some of his expenses, including his vehicle, it did not appear that she was spending much money on herself.  <u>See</u> Tr. at 3:4-17 (Court).  The Court asked whether, given the difficulty of tracing the funds Chapman used, it was worth providing her with the additional time to give her financial information to the USPO.  <u>See</u> Tr. at 3:18-4:4 (Court).  Chapman noted that some of the delay in providing the applicable financial information to the USPO relates to her desire to be accurate with the USPO. <u>See</u> Tr. at 5:9-19 (Robins).  Chapman argued that some of this information would be helpful in permitting the Court to decide whether to vary downward on her sentence and to tailor her conditions of supervised release appropriately.  <u>See</u> Tr. at 6:4-18 (Robins).  She noted that, in addition to evidence concerning where the bribe money went, she intends to present evidence regarding her psychological state through a psychological report.  <u>See</u> Tr. at 6:11-18 (Robins). Chapman noted that she was hesitant to file objections to the PSR if there may be an addendum to the PSR that will affect the guideline calculation.  <u>See</u> Tr. at 7:12-18 (Robins).

The United States asserted that the Court should follow the deadlines contained in rule 32 of the Federal Rules of Criminal Procedure.  <u>See</u> Tr. at 10:5-15 (Neda).  The United States noted that it has tried to accommodate Chapman.  <u>See</u> Tr. at 10:21-24 (Neda).  The United States represented that much of the information Chapman seeks to provide to the USPO would not affect her guideline

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

calculation and that there is no reason for further delay.  See Tr. at 10:25-12:15 (Neda).  Chapman noted that the PSR contains various statements that the USPO would require additional documentation from Chapman for the PSR to contain accurate information.  See Tr. at 13:20-14:5 (Robins).  She stated that her request for a variance would depend upon the PSR's depiction of the manner in which she used the illegally obtained funds she received.  See Tr. at 14:6-19 (Robins). Chapman asserted that providing some of the requested information to the USPO, such as the information regarding Chapman's psychological state, takes time, particularly given delays that result from the funding process under the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A.  See Tr. at 16:13-24 (Robins).  In response, the United States contended that Chapman's current psychological condition is not relevant to her mental state at the time she committed the offense based on various intervening circumstances, including her recent depression.  See Tr. at 17:13-21 (Neda).  The Court stated that it preferred to provide Chapman with as much opportunity to make her case as possible.  See Tr. at 18:22-19:9 (Court).  The Court noted, however, that it did not believe that the additional information would affect Chapman's guideline calculation.  See Tr. at 19:10-19 (Court).  The Court required the parties to file any informal objections within seven days of the date of the hearing and any formal objections within fourteen days of the date of the hearing. See Tr. at 19:20-24 (Court).  The Court then set a sentencing hearing for March 6, 2012.  See Tr. at 19:25-20:3 (Court).

## LAW REGARDING RULE 32 AND GOOD CAUSE

Rule 32(b)(1) of the Federal Rules of Criminal Procedure instructs courts that they "must impose sentence without unnecessary delay." Fed. R. Crim. P. 32(b)(1).  After the probation officer has drafted the presentence report, "[t]he probation officer must give the presentence report to the defendant, the defendant's attorney, and an attorney for the government at least 35 days before

sentencing unless the defendant waives this minimum period." Fed. R. Crim. P. 32(e)(2).  Parties

must, "[w]ithin 14 days after receiving the presentence report, . . . state in writing any objections,

including objections to material information, sentencing guideline ranges, and policy statements

contained in or omitted from the report." Fed. R. Crim. P. 32(f)(1).  A "court may, for good cause,

change any time limits prescribed in" rule 32 or, "for good cause, allow a party to make a new

objection at any time before sentence is imposed." Fed. R. Crim. P. 32(b)(2), (i)(1)(D).  Rule 45 of

the Federal Rules of Criminal Procedure provides courts with authority to extend the time a party

has to perform an act for good cause.  See Fed. R. Crim. P. 45(b)(1) ("When an act must or may be

done within a specified period, the court on its own may extend the time, or for good cause may do

so on a party's motion . . . . ").

        The Tenth Circuit has not adopted a definition for good cause under rule 32.  The Tenth

Circuit has, however, adopted a definition for good cause under rule 16 of the Federal Rules of Civil

Procedure in relation to the amendments of scheduling orders.  Because both rules use the same

phrase -- good cause -- a court is warranted in concluding that Congress intended that the same

meaning applies to this phrase in each statute.  Courts generally presume that a drafter of a statute

intends identical language in statutes with similar purposes to have the same meaning.  See Merrill

Lynch, Pierce, Fenner & Smith v. Dabit, 547 U.S. 71, 85-86 (2006).  Additionally, "[t]he rules of

statutory construction apply to the Federal Rules . . . ."  In re Kubler, No. 11-0048, 2012 WL

394680, at 11 (D.N.M. Jan. 25, 2012).  Accord Leatherman v. Tarrant Cnty. Narcotics Intelligence

& Coordination Unit, 507 U.S. 163, 168 (1993)(applying the expressio unius est exclusio alterius

canon when interpreting rule 9(b) of the Federal Rule of Civil Procedure); Hillis v. Heineman, 626

F.3d 1014, 1017-18 (9th Cir. 2010)("This same principle of statutory construction applies to

interpreting the Federal Rules of Civil Procedure.").

"Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts."  Advanced Optics Elecs., Inc. v. Robins, 769 F.Supp.2d 1285, 1313 (D.N.M. 2010)(Browning, J.).  Accord Gerald v. Locksley, No. 10-0721, 2011 WL 3510845, at *13-14 (D.N.M. Aug. 1, 2011)(Browning, J.).   The Tenth Circuit has interpreted civil rule 16 as imposing a "good cause" standard to untimely motions to amend when a scheduling order governs the case.  See Minter v. Prime Equip. Co., 451 F.3d 1196, 1205 n.4 (10th Cir. 2006).  "This requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay."  Minter v. Prime Equip. Co., 451 F.3d at 1205 n.4.

This Court has previously stated that the civil rule 16(b) good-cause inquiry focuses on the diligence of the party seeking amend the scheduling.  See Walker v. THI of N.M. at Hobbs Ctr., 262 F.R.D. 599, 602-03 (D.N.M. 2009)(Browning, J.); Guidance Endodontics, LLC v. Dentsply Int'l, Inc., No. 08-1101, 2009 WL 3672505, at *2-3 (D.N.M. Sept. 29, 2009)(Browning, J.); Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schs., Nos. 02-1146 and 03-1185, 2007 WL 2296955, at *3 (D.N.M. June 5, 2007)(Browning, J.).

> Rule 16(b)'s "good cause" standard is much different than the more lenient standard contained in Rule 15(a).  Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party.  Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. Properly construed, "good cause" means that scheduling deadlines cannot be met despite a party's diligent efforts.  In other words, this court may "modify the schedule on a showing of good cause if [the deadline] cannot be met despite the diligence of the party seeking the extension." Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.

Dilmar Oil Co., Inc. v. Federated Mut. Ins. Co., 986 F. Supp. 959, 980 (D.S.C. 1997)(citations omitted), aff'd on other grounds, 129 F.3d 116 (4th Cir. 1997).

In In re Kirkland, 86 F.3d 172 (10th Cir. 1996), the Tenth Circuit dealt with the definition

of "good cause" in the context of civil rule 4(j).  The Tenth Circuit noted:

> [W]ithout attempting a rigid or all-encompassing definition of "good cause," it would appear to require at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice, and some showing of "good faith on the part of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified" is normally required.

86 F.3d at 175 (emphasis omitted)(internal quotation marks omitted)(quoting Putnam v. Morris, 833 F.2d 903, 905 (10th Cir.1987)).  The Tenth Circuit explained that Putnam v. Morris "thus recognized that the two standards, although interrelated, are not identical and that 'good cause' requires a greater showing than 'excusable neglect.'"  In re Kirkland, 86 F.3d at 175.

## ANALYSIS

The Court believes that there is good cause to continue the sentencing until March 6, 2012. The Court wishes to give Chapman a full opportunity to present her arguments regarding an appropriate sentence.  The Court believes that Chapman has acted in good faith in seeking these continuances.  The Court will require the parties to file informal objections to the PSR within seven days from the date of the January 30, 2012 hearing and formal objections to the PSR within fourteen days of the January 30, 2012 hearing.

There are a relatively large amount of financial transactions and information involved in the underlying offenses.  Consolidating all of this information into a presentence report can take time and can be a challenging process.  It also takes time to secure appropriate funding under the CJA for a psychological report.  It would not have been feasible to do all that work before March 6, 2012. The Court concludes that Chapman has a "reasonable basis for noncompliance within the time specified." In re Kirkland, 86 F.3d at 175.  Permitting the continuance will give Chapman additional time to prepare a sentencing memorandum for sentencing.  Chapman and her attorney do not appear

to have acted carelessly or with neglect in seeking these continuances.  Chapman is facing a significant sentence, with the USPO recommending a sentence of 10-years imprisonment pursuant to its guideline calculation.  <u>See</u> PSR ¶ 118, at 35.  There also appear to be some surrounding circumstances that may mitigate the gravity of Chapman's conduct and that could support a persuasive argument for a downward variance on her sentence.  Additionally, the Court does not believe that the United States will suffer any prejudice from the delay.  The delay is relatively short. Nevertheless, the Court believes it is appropriate to require the parties to file informal objections to the PSR within seven days from the date of the January 30, 2012 hearing and formal objections to the PSR within fourteen days of the January 30, 2012 hearing.  Any changes that may occur to the PSR will not likely affect the guideline calculation, so there is no need to provide the amount of time to file objections that Chapman has requested.  The Court concludes that it should grant in part and deny in part the First Opposed Motion.

**IT IS ORDERED** that the Defendant's First Opposed Motion to Continue Sentencing with Supporting Authorities, filed January 17, 2012 (Doc. 37), is granted in part and denied in part.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
   United States Attorney
Cynthia L. Weisman
Tara C. Neda
   Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

-8-

Jacquelyn Robins
Albuquerque, New Mexico

*Attorney for the Defendant*