IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                        No. CR 11-0904 JB

LAURIE CHAPMAN,

      Defendant.

**UNSEALED MEMORANDUM OPINION AND ORDER**[1]

**THIS MATTER** comes before the Court on: (i) the United States' Sentencing Memorandum, filed February 13, 2012 (Doc. 42)("USA Sentencing Memorandum"); and (ii) the Defendant's Sealed Sentencing Memorandum, filed March 6, 2012 (Doc. 51)("Chapman Sentencing Memorandum"). The Court held a sentencing hearing on March 20, 2012. The primary issues are: (i) what level of enhancement the Court should apply to Defendant Laurie Chapman's offense level under U.S.S.G. § 2C1.1; (ii) whether the Court should apply a reduction to Chapman's offense level under U.S.S.G. § 3E1.1 for acceptance of responsibility; and (iii) whether the Court should vary downward on Chapman's sentence from the advisory guideline range. Because Plaintiff United States of America has conceded that it cannot prove by a preponderance of the evidence the facts necessary to support an 18-level enhancement under U.S.S.G. § 2C1.1, because the United States Probation Office ("USPO") and Chapman assert that a 12-level enhancement is more appropriate,

---

[1]Defendant Laurie Chapman filed her sentencing memorandum under seal. In its Sealed Memorandum Opinion and Order, filed June 11, 2012 (Doc. 65)("Sealed MOO"), the Court gave her ten days to propose redactions to protect confidential information. See Sealed MOO at 1 n.1. Chapman's counsel contacted the Court's courtroom deputy on June 20, 2012, and related that Chapman wants all references to her son's name redacted. The Court has gone through its Memorandum Opinion and Order and replaced all references to Chapman's son's name with a general reference to one of her sons.

and because the Court concludes that a 12-level enhancement under this guideline is appropriate, the Court will apply a 12-level enhancement under U.S.S.G. § 2C1.1.  Because Chapman has obstructed justice and because there is nothing extraordinary in this case suggesting that she accepted responsibility within the meaning of U.S.S.G. § 3E1.1, the Court will not apply a 2-level reduction for acceptance of responsibility.  Because the Court believes that a downward variance best reflects the factors in 18 U.S.C. § 3553(a), the Court will vary downward to a sentence of 70-months imprisonment for each count and the sentences will run concurrently.

## FACTUAL BACKGROUND

Chapman was born on November 28, 1960.  Chapman's father is ninety-two years old, and her mother is ninety-one years old.  See Re-Disclosed Presentence Investigation Report ¶ 64, at 19, disclosed March 12, 2012 ("Re-Disclosed PSR").  Chapman is divorced from her ex-husband.  See Re-Disclosed PSR ¶ 72, at 21.  "Laurie Chapman, while employed as a Facilities Manager, at the New Mexico Department of Corrections, awarded several roofing and construction contracts to Anthony Moya, d/b/a/ Omni Development."  Re-Disclosed Presentence Investigation Report ¶ 6, at 3.  "In that capacity, Laurie Chapman was an agent of NMCD."  Re-Disclosed PSR ¶ 8, at 4.  "In or about March of 2007, Laurie Chapman was instrumental in implementing a 'price agreement' procedure that permitted her to select a roofing company to do work for NMCD without requiring the roofing company" to go through a bidding process.  Re-Disclosed PSR ¶ 9, at 4.  "Chapman could select, at will, any company placed on a price agreement to do work at NMCD instead of using" a bidding process.  Re-Disclosed PSR ¶ 9, at 4.  "Chapman created numerous Request for Proposals (RFP), roofing company price agreements, and emergency declarations, which were designed to justify that Omni Corporation was the qualifying company to perform the necessary services."  Re-Disclosed PSR ¶ 6, at 3.  "In exchange for Omni Development performing close to

$4 million worth of facility maintenance construction jobs, Ms. Chapman received varying amounts of kickbacks (bribes) in the form of cash, wire transfers, or checks, and at least two credit card payments."  Re-Disclosed PSR ¶ 6, at 3-4.  "The total amount of bribe payments that can be attributed from Mr. Moya, d/b/a Omni Corporation to Laurie Chapman is $237,080."  Re-Disclosed PSR ¶ 6, at 3-4.

The federal investigation began in July and August of 2010, with the interviews of Moya concerning Omni Development, Inc.  See Re-Disclosed PSR ¶ 23, at 7.  Based on unrelated conduct, "Anthony Moya was convicted of a felony offense, Embezzlement from an Indian Tribal Organization" in "the United States District Court, District of New Mexico" where he received a sentence of "18 months imprisonment."  Re-Disclosed PSR ¶ 25, at 11.  On September 10, 2010, Moya participated in "a consensually monitored meeting with Laurie Chapman, who was visiting him at FCI La Tuna."  Re-Disclosed PSR ¶ 35, at 11.  "At the request of FBI agents, Anthony Moya told Laurie Chapman he was concerned the bribe payments associated with the NMCD contracts would be discovered."  Re-Disclosed PSR ¶ 35, at 11.  "During the visit, Laurie Chapman told Mr. Moya they should call the payments (referring to bribes) as personal loans, made to her."  Re-Disclosed PSR ¶ 35, at 11.  "Chapman stated she would claim that her" Public Employees Retirement Association ("PERA") account[2] "was collateral for the loan."  Re-Disclosed PSR ¶ 35, at 11.

On November 3, 2010, agents from the Federal Bureau of Investigation ("FBI") executed a search warrant at a home that Chapman and her boyfriend, Scott Smith, shared.  See Re-Disclosed

---

[2]The Public Employees Retirement Association of New Mexico administers these retirement accounts in trust for public employees.  See Public Employees Retirement Association of New Mexico, http://www.pera.state.nm.us/index.html (last visited June 7, 2012).

PSR ¶ 24, at 8.  "Chapman was asked about the contracts awarded to Omni Development, Inc. and monies that were given to her in exchange for the contracts."  Re-Disclosed PSR ¶ 24, at 8.  "Chapman told FBI agents the money paid to her by Anthony Moya, d/b/a Omni Development, Inc. was a loan and that her PERA retirement was used as collateral for the loan."  Re-Disclosed PSR ¶ 24, at 8.  "Chapman was unable to state the total amount of the loan."  Re-Disclosed PSR ¶ 24, at 8.  "According to Ms. Chapman, and corroborated by Anthony Moya, he asked her to create a company known as Zia Construction, Inc., so that he could deduct the loan payments from his business taxes."  Re-Disclosed PSR ¶ 24, at 8.  "Ms. Chapman could not provide an explanation of why she created Zia Construction Management, Inc. under her maiden name of Laurie Hoge."  Re-Disclosed PSR ¶ 24, at 8.  "Ms. Chapman indicated she had a promissory note reference the personal loan; however, she was unable to produce the document."  Re-Disclosed PSR ¶ 24, at 8.

When FBI agents were interviewing Smith, "Chapman's live-in boyfriend," at Smith's place of work, Chapman interrupted the interview, asking if it "was voluntary" and then asking "to speak to Scott Smith in private."  Re-Disclosed PSR ¶ 25, at 8.  "Following their brief meeting, Scott Smith told FBI agents that Laurie Chapman demanded he stop speaking to the agents."  Re-Disclosed PSR ¶ 25, at 8.  In response to a grand jury subpoena, Chapman presented what FBI agents concluded was a fabricated promissory note containing a promise to pay Moya $80,000.00.  See Re-Disclosed PSR ¶¶ 26-27, at 9.  Moya, when presented with the promissory note, stated that he had never seen it before.  See Re-Disclosed PSR ¶ 27, at 9.  The promissory note did not contain Moya's signature.  See Re-Disclosed PSR ¶ 27, at 9.

One of Chapman's sons "has a pending Information charging two counts of Trafficking Methamphetamine and one count of Possession of a Controlled Substance, at the Santa Fe County District Court, in Santa Fe, New Mexico."  Re-Disclosed PSR ¶ 75, at 22.  "Available court

documents show that as of September 13, 2011, as ordered by the court, he has been residing at the Santa Fe Recovery Center in Santa Fe, New Mexico." Re-Disclosed PSR ¶ 75, at 22. "Laurie Chapman reported her son . . . has a long history of substance abuse, commencing at age 12." Re-Disclosed PSR ¶ 75, at 22. "She reported her son has used alcohol, marijuana, cocaine, crack cocaine, and heroin." Re-Disclosed PSR ¶ 75, at 22. "Chapman indicated she had placed" one of her sons "in several residential substance abuse treatment programs, both within the State of New Mexico and elsewhere . . . ." Re-Disclosed PSR ¶ 75, at 22. "In addition, she and her sons, and her former spouse have participated in numerous family counseling sessions over the past several years" where "[t]he primary focus was on" one of her son's "drug addiction." PSR ¶ 75, at 22. "She advised that her employment insurance initially covered the expenses; however, there were many times when she had to personally cover the costs of treatment." Re-Disclosed PSR ¶ 75, at 22. "Chapman further advised" that one of her sons "has a hard time staying drug free." Re-Disclosed PSR ¶ 75, at 22-23. "According to Ms. Chapman, she exhausted large amounts of money by placing her son . . . in various substance abuse treatment programs." Re-Disclosed PSR ¶ 76, at 23. For approximately the last four years, Chapman's ex-husband has not assisted her in paying for their son's drug treatment. See Re-Disclosed PSR ¶ 74, at 22.

Chapman has spent between approximately $60,763.37 to $100,000.00 from July 2008 to June 2010 on her son's drug rehabilitation. See Addendum to the Presentence Investigation Report at 3, disclosed March 12, 2012; Summary of Bank Expenditures at 1-2 (attached to Re-Disclosed PSR)("PSR Summary of Bank Expenditures"); Summary of Bank Expenditures at 2, filed March 15, 2012 (Doc. 53-2)("USA Summary of Bank Expenditures"). Other relevant expenses from July 2008 to June 2010 include approximately: (i) between $15,200.00 and $18,740.00 for legal expenses; (ii) between $11,133.89 to $12,686.20 on expenses for her sons; (iii) between $3,695.67

to $5,062.95 on travel expenses; (iv) between $35,059.02 to $43,750.24 on household expenses; (v) between $18,508.00 to $19,858.00 on expenses attributable to her boyfriend Smith; and (vi) between $90,607.34 to $95,066.13 in unaccounted for expenses.  <u>See</u> PSR Summary of Bank Expenditures at 1-2; USA Summary of Bank Expenditures at 2.

## PROCEDURAL BACKGROUND

On April 13, 2011, the grand jury issued an Indictment charging Chapman with thirty counts asserting that she violated 18 U.S.C. §§ 2 and 666(a)(1)(B), that being theft or bribery concerning programs receiving federal funds.  <u>See</u> Doc. 1.  On July 28, 2011, Chapman pled guilty to the Indictment before the Honorable Karen B. Molzen, Chief United States Magistrate Judge, without a plea agreement.  <u>See</u> Plea Minute Sheet at 1, filed July 28, 2011 (Doc. 22).  On August 22, 2011, Chapman consented to the entry of a Consent Order of Forfeiture (Money Judgment), <u>see</u> Doc. 23, where she "agreed to forfeit $237,080.00 representing the proceeds of her offense, to the United States in the form of a money judgment," Consent Order of Forfeiture (Money Judgment) at 1.

The USPO disclosed a Presentence Investigation Report ("PSR") for Chapman on October 19, 2011.  On March 12, 2012, the USPO disclosed the Re-Disclosed PSR to supplement a variety of information in the PSR largely based on additional information Chapman provided to the USPO. In the Re-Disclosed PSR, the USPO calculates Chapman's total offense level to be 32.  <u>See</u> Re-Disclosed PSR ¶ 58, at 18.  The Re-Disclosed PSR applies a base offense level of 14 pursuant to U.S.S.G. § 2C1.1(a)(1).  <u>See</u> Re-Disclosed PSR ¶ 49, at 15.  The Re-Disclosed PSR includes a 2-level upward adjustment under U.S.S.G. § 2C1.1(b)(1) given that "the offense involved more than one bribe or extortion."  Re-Disclosed PSR ¶ 50, at 15.  The Re-Disclosed PSR includes a 12-level upward adjustment under U.S.S.G. § 2C1.1(b)(2) given that Chapman received more than $200,000.00 but less than $400,000.00 in bribes.  <u>See</u> Re-Disclosed PSR ¶ 51, at 15.  The Re-

Disclosed PSR includes a 4-level upward adjustment under U.S.S.G. § 2C1.1(b)(3) given that "the offense involved an elected public official or any public official in a high level decision making or sensitive position."  Re-Disclosed PSR ¶ 52, at 15.  The Re-Disclosed PSR includes a 2-level upward adjustment under U.S.S.G. § 3C1.1(b)(1) given that Chapman obstructed justice on several occasions, including: (i) her visit to Moya while he was incarcerated where she told him to refer to the bribes as personal loans; (ii) her interview with the FBI where she lied about various details, including whether the bribes were personal loans and the existence of a promissory note; (iii) her instruction to Smith not to answer any of the FBI's questions; and (iv) her presentation of a forged promissory note to a grand jury.  See Re-Disclosed PSR ¶ 55, at 16-17.  The Re-Disclosed PSR includes a 2-level reduction under U.S.S.G. § 3E1.1 based on an assertion that there are extraordinary circumstances which support Chapman's acceptance of responsibility in spite of her obstruction of justice.  See Re-Disclosed PSR ¶ 57, at 17.  The Re-Disclosed PSR notes that, in support of this reduction: (i) Chapman pled guilty to the thirty-count indictment; (ii) she pled guilty before the United States had to prepare for trial; (iii) her obstruction of justice occurred before federal officials filed formal charges against her; and (iv) she has not sought to destroy evidence or to intimidate witnesses.  The Re-Disclosed PSR lists her criminal history category as I, based on 0 criminal history points.  See Re-Disclosed PSR ¶ 61, at 18.  The Re-Disclosed PSR calculates that an offense level of 32 and a criminal history category of I results in a guideline imprisonment range of 121 to 151 months.  See Re-Disclosed PSR ¶ 118, at 35.

On February 13, 2012, the United States filed its USA Sentencing Memorandum.  See Doc. 42.  It argues that, while a 12-level increase under U.S.S.G. § 2C1.1(b)(2) is appropriate, Chapman should receive an 18-level enhancement under this guideline in light of "[t]he benefit received by Mr. Moya" in the form of "$4 million in State contracts."  USA Sentencing Memorandum at 2.  The

United States also contends that a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1 is not appropriate in light of Chapman's obstruction of justice.  See USA Sentencing Memorandum at 5.  It asserts that there are no extraordinary circumstances that justify the application of a reduction for Chapman under this guideline.  See USA Sentencing Memorandum at 5-6.  It notes that her conduct was not isolated, and that she did not voluntarily withdraw from criminal activity given the extent and duration of her obstructive conduct.  See USA Sentencing Memorandum at 6.  The United States emphasizes that Chapman took approximately thirty bribes.  See USA Sentencing Memorandum at 9-10.  The United States does not request a specific sentence, but asserts that a downward variance is inappropriate in this case.  See USA Sentencing Memorandum at 11-12.

On February 27, 2012, Chapman filed her Response to Government's Sentencing Memorandum (Doc. 42).  See Doc. 46 ("Response to USA Sentencing Memorandum").  Chapman asserts that a reduction for acceptance of responsibility is appropriate given that extraordinary circumstances exist.  See Response to USA Sentencing Memorandum at 3.  She contends that she has saved the United States the expense of going to trial and engaged in obstructive conduct before the filing of formal charges.  See Response to USA Sentencing Memorandum at 3.  She also notes that she did not intimidate witnesses or destroy evidence.  See Response to USA Sentencing Memorandum at 3-4.  She contends that it is relevant that she did not engage in obstructive conduct once she received an attorney.  See Response to USA Sentencing Memorandum at 5-6.

On March 6, 2012, Chapman filed her Chapman Sentencing Memorandum.  See Doc. 51.  She asks the Court to vary downward to "a sentence of 9 months incarceration with 9 months of home detention followed by three years of supervised release."  Chapman Sentencing Memorandum at 1-2 (emphasis omitted).  She asserts that this sentence is sufficient but not greater than necessary.  See Chapman Sentencing Memorandum at 6.  She states that she does not object to a 4-level

enhancement under U.S.S.G. § 2C1.1(b)(3).  <u>See</u> Chapman Sentencing Memorandum at 9 ("Since it appears that Defendant Chapman's employment as a facilities manager for the Corrections Department meets the technical requirements of § 2C1.1(b)(3), Defendant Chapman did not file an objection to the four level increase.").  She asks the Court to consider, however, that she was at the lowest level of administration at the New Mexico Department of Corrections ("NMDC").  <u>See</u> Chapman Sentencing Memorandum at 9.  She emphasizes that she has had various family problems, including her son's drug addiction.  <u>See</u> Chapman Sentencing Memorandum at 11-14.  She argues that she was spending much of the bribe money she received on her son rather than on herself.  <u>See</u> Chapman Sentencing Memorandum at 16-20.  She requests a downward variance to the equivalent of an offense level of 13.  <u>See</u> Chapman Sentencing Memorandum at 27.  On March 12, 2012, the USPO disclosed an Addendum to the Presentence Investigation Report to reaffirm its conclusion that Chapman should receive a 2-level reduction for acceptance of responsibility.  <u>See</u> Addendum to PSR at 1-2.

On March 15, 2012, the United States filed its United States' Sealed Response to Defendant's Response to Government's Sentencing Memorandum (Doc. 46), Defendant's Sealed Sentencing Memorandum (Doc. 51), and Defendant's Sealed Supplement to Sealed Sentencing Memorandum (Doc. 52).  <u>See</u> Doc. 53 ("Response to Chapman Sentencing Memorandum").  The United States re-emphasized that a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1 is not appropriate.  <u>See</u> Response to Chapman Sentencing Memorandum at 1-2.  The United States objects to the PSR's calculation that a 12-level enhancement under U.S.S.G. § 2C1.1(b)(2) is appropriate rather than an 18-level enhancement in light of the total amount of government contracts awarded to Moya.  <u>See</u> Response to Chapman Sentencing Memorandum at 3.  The United States asserts that there is no evidentiary support for Chapman's claim that approximately $33,000.00 of

her expenses are attributable to her son's rehab.  See Response to Chapman Sentencing Memorandum at 5-6.

Chapman filed a reply brief to the USA Sentencing Memorandum on March 18, 2012.  See Defendant's Sealed Reply to Government's Sealed Response (Doc. 53), filed March 18, 2012 (Doc. 54)("Reply").  Chapman asks the Court to consider the totality of circumstances when determining whether to apply a reduction for acceptance of responsibility.  See Reply at 2.  Chapman asserts that the $33,000.00 does not appear in bank deposits or transactions, but that she "has admitted receiving this money."  Reply at 10.

At the sentencing hearing on March 20, 2012, Chapman stated that she had no objections to the Re-Disclosed PSR.  See Transcript of Hearing at 2:20-25 (taken March 20, 2012)(Robins)("Tr.").[3]  The United States asserted that, with respect to the issue of acceptance of responsibility, the Court should consider the degree to which Chapman obstructed justice and whether there are any extraordinary circumstances in her case.  See Tr. at 3:5-15 (Neda).  The United States noted that Chapman engaged in several instances of obstruction of justice and did not voluntarily withdraw from that conduct.  See Tr. at 3:22-24 (Neda).  Chapman argued that there are extraordinary circumstances in this case that justify a reduction for acceptance of responsibility.  See Tr. 6:21:7:3 (Robins).  She argued that she has accepted responsibility by pleading guilty.  See Tr. at 9:22-10:2 (Chapman).  The Court acknowledged that Chapman appears to have accepted responsibility in a lay sense, but that she is not entitled a reduction on her offense level for acceptance of responsibility under U.S.S.G. § 3E1.1.  See Tr. at 12:10-15:2 (Court).  The United States argued that an 18-level enhancement was appropriate under U.S.S.G. § 2C1.1(b)(2) given that

_____

[3]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Chapman awarded approximately four million dollars worth of government contracts.  See Tr. at 17:17-18:3 (Neda).  The Court inquired why it was appropriate to consider the entire amount of the government contracts rather than the profit.  See Tr. at 19:8-15 (Court).  The United States then conceded that an 18-level enhancement was not appropriate.  See Tr. at 23:18-24 (Neda).  Chapman emphasized that she began taking bribes, because she needed to pay for drug treatment for her son, who she represented has serious drug problems.  See Tr. at 25:15-26:3 (Robins).  Chapman conceded that she used some of the money from the bribes on cocaine for herself.  See Tr. at 36:2-6 (Robins).  The United States asserted that the Court should approach Chapman's arguments and evidence with caution given that she presented forged documents before a grand jury.  See Tr. at 60:13-61:2 (Neda).

## LAW REGARDING U.S.S.G. § 2C1.1

U.S.S.G. § 2C1.1 applies to, among other criminal conduct, "[o]ffering, [g]iving, [s]oliciting, or [r]eceiving a [b]ribe."  U.S.S.G. § 2C1.1.  U.S.S.G. 2C1.1(a) prescribes a base offense level of 14 "if the defendant was a public official" and prescribes a base offense level of 12 in all other circumstances.  U.S.S.G. 2C1.1(a).  U.S.S.G. § 2C1.1(b)(1) prescribes a 2-level enhancement to a defendant's offense level "[i]f the offense involved more than one bribe or extortion."  U.S.S.G. § 2C1.1(b)(1).  U.S.S.G. § 2C1.1(b)(2) provides:

> If the value of the payment, the benefit received or to be received in return for the payment, the value of anything obtained or to be obtained by a public official or others acting with a public official, or the loss to the government from the offense, whichever is greatest, exceeded $5,000, increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

U.S.S.G. § 2C1.1(b)(2).  U.S.S.G. § 2B1.1 provides the following table for determining the appropriate enhancement:

If the loss exceeded $5,000, increase the offense level as follows:

| Loss (Apply the Greatest) | Increase in Level |
|---|---|
| (A)    $5,000 or less | no increase |
| (B)    More than $5,000 | add 2 |
| (C)    More than $10,000 | add 4 |
| (D)    More than $30,000 | add 6 |
| (E)    More than $70,000 | add 8 |
| (F)    More than $120,000 | add 10 |
| (G)    More than $200,000 | add 12 |
| (H)    More than $400,000 | add 14 |
| (i)    More than $1,000,000 | add 16 |
| (J)    More than $2,500,000 | add 18 |
| (K)    More than $7,000,000 | add 20 |
| (L)    More than $20,000,000 | add 22 |
| (M)    More than $50,000,000 | add 24 |
| (N)    More than $100,000,000 | add 26 |
| (O)    More than $200,000,000 | add 28 |
| (P)    More than $400,000,000 | add 30. |

U.S.S.G. § 2B1.1.  Application note 3 to U.S.S.G. § 2C1.1 guideline fleshes out how U.S.S.G.

§ 2C1.1(b)(2) applies:

> "Loss", for purposes of subsection (b)(2), shall be determined in accordance with Application Note 3 of the Commentary to § 2B1.1 (Theft, Property Destruction, and Fraud).  The value of 'the benefit received or to be received' means the net value of such benefit.  Examples: (1) A government employee, in return for a $500 bribe, reduces the price of a piece of surplus property offered for sale by the government from $10,000 to $2,000; the value of the benefit received is $8,000.  (2) A $150,000 contract on which $20,000 profit was made was awarded in return for a bribe; the value of the benefit received is $20,000.  Do not deduct the value of the bribe itself in computing the value of the benefit received or to be received.  In the preceding examples, therefore, the value of the benefit received would be the same regardless of the value of the bribe.

U.S.S.G. § 2C1.1 cmt. n.3.

U.S.S.G. § 2C1.1(b)(3) prescribes a 4-level enhancement to a defendant's offense level "[i]f

the offense involved an elected public official or any public official in a high-level decision-making

or sensitive position," and provides that, "[i]f the resulting offense level is less than level 18" after

the 4-level enhancement, "increase to level 18." U.S.S.G. § 2C1.1(b)(3). "'High-level decision-making or sensitive position' means a position characterized by a direct authority to make decisions for, or on behalf of, a government department, agency, or other government entity, or by a substantial influence over the decision-making process." U.S.S.G. § 2C1.1 cmt. n.4(A). Application note 4(B) to this guideline provides some examples "of a public official in a high-level decision-making position," such as "a prosecuting attorney, a judge, an agency administrator, and any other public official with a similar level of authority." U.S.S.G. § 2C1.1 cmt. n.4(B). "Examples of a public official who holds a sensitive position include a juror, a law enforcement officer, an election official, and any other similarly situated individual." U.S.S.G. § 2C1.1 cmt. n.4(B). The United States Court of Appeals for the Fifth Circuit has stated that "important mark of high-level responsibility is the existence of discretion involving final decision-making authority over matters of public policy or over the expenditure of substantial sums of money.'" United States v. Snell, 152 F.3d 345, 347 (5th Cir. 1998).

## LAW REGARDING ACCEPTANCE OF RESPONSIBILITY

A defendant is entitled to a two-level reduction in his offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). Upon the United States' motion, a defendant may be entitled to an additional one-level reduction if the United States asserts that the defendant has assisted authorities in its investigation or prosecution "by timely notifying the authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently." U.S.S.G. § 3E1.1(b). The reduction for acceptance of responsibility "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse."

U.S.S.G. § 3E1.1 cmt. n.2.  Accord United States v. Foghorn, No. 03-2365, 2007 WL 1302649, at

*3 (D.N.M. Feb. 21, 2007)(Browning, J.).

A district court's decision to deny an adjustment for acceptance of responsibility to a

defendant is reviewed for clear error.  See United States v. Sarracino, 340 F.3d 1148, 1173 (10th Cir.

2003).  The guidelines recognize that the sentencing court "is in a unique position to evaluate a

defendant's acceptance of responsibility," and, therefore, the district court's determination that a

defendant is not entitled to an adjustment for acceptance of responsibility "is entitled to great

deference on review."  U.S.S.G. § 3E1.1 cmt. n.5.  See United States v. Loza, 184 F.App'x 772, 775

(10th Cir. 2006)(unpublished)("We give 'great deference' to the district court's determination

whether a defendant accepted responsibility.").

Application note 4 to U.S.S.G. § 3E1.1 provides: "Conduct resulting in an enhancement

under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the

defendant has not accepted responsibility for his criminal conduct.  There may, however, be

extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply."  U.S.S.G.

§ 3E1.1 cmt n.4.  The United States Court of Appeals for the Tenth Circuit has adopted the

following test to determine whether a given case qualifies as an extraordinary case under application

note 4:

> We therefore hold that in determining whether a case is "extraordinary" so as to
> merit both a § 3E1.1 reduction and a § 3C1.1 enhancement, the sentencing court
> must consider the totality of the circumstances, including, but not limited to
> 1) whether the obstruction of justice was an isolated incident or an on-going,
> systematic effort to obstruct the prosecution, and 2) whether defendant voluntarily
> terminated his obstructive conduct and truthfully admitted the conduct comprising
> the offense of conviction.

United States v. Salazar-Samaniega, 361 F.3d 1271, 1280 (10th Cir. 2004).  A district court must

make findings to support a conclusion that a particular case qualifies as an extraordinary case.  See

United States v. Salazar-Samaniega, 361 F.3d at 1280 ("While the 'sentencing judge is entitled to great deference on review' of an acceptance-of-responsibility adjustment, it is the obligation of the defendant to present evidence to support the adjustment and the district court to make such findings on the record." (citation omitted)).  The Tenth Circuit found that the following circumstances did not qualify as an extraordinary case:

> Nevertheless, even if we were to consider this argument, Howard fails to meet the requirements of Salazar-Samaniega for two reasons.  First, as the government points out, Howard's conduct was not an isolated event.  Howard had to discover the confidential informant's identity, locate the informant's mother, write to his father to request that he contact the informant's mother, arrange transportation for his father, and call his father to ensure the mother would be contacted prior to trial.  Such conduct hardly qualifies as an "isolated incident," but rather is an "on-going systematic effort" to obstruct justice.  Salazar-Samaniega, 361 F.3d at 1280.  Second, Howard failed to establish he voluntarily terminated his obstructive conduct.  Because of Howard's efforts, the informant's mother had to be relocated, precluding further contact.  After being indicted for attempted intimidation of a witness, Howard pled guilty to the drug trafficking charges.  His plea, entered immediately prior to trial, obviated the need for any further contact with the confidential informant or his mother.  Howard fails to satisfy the exceptional circumstances standard.  See United States v. Buckley, 192 F.3d 708, 711 (7th Cir. 1999)("The fact that a defendant having done everything he could to obstruct justice runs out of tricks, throws in the towel, and pleads guilty does not make him a prime candidate for rehabilitation.").

United States v. Howard, 215 F.App'x 750, 755-56 (10th Cir. 2007)(unpublished).

## ANALYSIS

There being no disputes about the Re-Disclosed PSR's factual findings, the Court adopts them as its own. Because the United States has conceded that it cannot prove by a preponderance of the evidence the facts necessary to support an 18-level enhancement under U.S.S.G. § 2C1.1, because the USPO and Chapman assert that a 12-level enhancement is more appropriate, and because the Court concludes that a 12-level enhancement under this guideline is appropriate, the Court will apply a 12-level enhancement under U.S.S.G. § 2C1.1.  Because Chapman has obstructed

justice and because there is nothing extraordinary in this case suggesting that she has accepted responsibility within the meaning of U.S.S.G. § 3E1.1, the Court will not apply a 2-level reduction for acceptance of responsibility.  Because the Court believes that a downward variance best reflects the factors in 18 U.S.C. § 3553(a), the Court will vary downward to a sentence of 70-months imprisonment for each count and the sentences will run concurrently.

**I.      THE COURT WILL NOT APPLY AN 18-LEVEL ENHANCEMENT UNDER U.S.S.G. § 2C1.1(b)(2).**

The United States originally sought an 18-level enhancement under U.S.S.G. § 2C1.1(b)(2), because Chapman awarded approximately four millions dollars worth of government contracts to Moya.  At the sentencing hearing, however, it conceded that it did not have evidence to prove how much profit Moya received under those contracts.  See Tr. at 23:18-24 (Neda).  U.S.S.G. § 2C1.1(b)(2) provides:

> If the value of the payment, the benefit received or to be received in return for the payment, the value of anything obtained or to be obtained by a public official or others acting with a public official, or the loss to the government from the offense, whichever is greatest, exceeded $5,000, increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

U.S.S.G. § 2C1.1(b)(2).  U.S.S.G. § 2B1.1 provides the following table for determining the appropriate enhancement:

If the loss exceeded $5,000, increase the offense level as follows:

| Loss (Apply the Greatest) | | Increase in Level |
|---|---|---|
| (A) | $5,000 or less | no increase |
| (B) | More than $5,000 | add 2 |
| (C) | More than $10,000 | add 4 |
| (D) | More than $30,000 | add 6 |
| (E) | More than $70,000 | add 8 |
| (F) | More than $120,000 | add 10 |
| (G) | More than $200,000 | add 12 |

(H)     More than $400,000              add 14
(i)      More than $1,000,000           add 16
(J)      More than $2,500,000           add 18
(K)     More than $7,000,000           add 20
(L)      More than $20,000,000         add 22
(M)    More than $50,000,000         add 24
(N)     More than $100,000,000       add 26
(O)     More than $200,000,000       add 28
(P)     More than $400,000,000       add 30.

U.S.S.G. § 2B1.1.   Application note 3 to U.S.S.G. § 2C1.1 guideline fleshes out how U.S.S.G.

§ 2C1.1(b)(2) applies:

> "Loss", for purposes of subsection (b)(2), shall be determined in accordance with
> Application Note 3 of the Commentary to § 2B1.1 (Theft, Property Destruction, and
> Fraud).  The value of 'the benefit received or to be received' means the net value of
> such benefit. Examples: (1) A government employee, in return for a $500 bribe,
> reduces the price of a piece of surplus property offered for sale by the government
> from $10,000 to $2,000; the value of the benefit received is $8,000.  (2) A $150,000
> contract on which $20,000 profit was made was awarded in return for a bribe; the
> value of the benefit received is $20,000.  Do not deduct the value of the bribe itself
> in computing the value of the benefit received or to be received.  In the preceding
> examples, therefore, the value of the benefit received would be the same regardless
> of the value of the bribe.

U.S.S.G. § 2C1.1 cmt. n.3.  Given that there is no evidence regarding the value of the benefit Moya

received under these government contracts, the United States cannot establish by a preponderance

of the evidence that an 18-level enhancement is appropriate under this guideline.  See United States

v. Manatau, 647 F.3d 1048, 1054 n.2 (10th Cir. 2011)(noting that the preponderance-of-the-evidence

standard applies during sentencing).  As far as the record reflects, Moya and his company provided

the State of New Mexico with good-quality work in line with the amount it received in payment.

While the United States suggests there was padding of the contract or inflated invoices, at least to

cover the costs of bribing Chapman and getting the contracts, the United States did not provide the

detailed accounting necessary to establish any amount of padding or the act of padding.  Thus, the

Court will apply the 12-level increase under U.S.S.G. § 2C1.1 consistent with the Re-Disclosed PSR

and to which Chapman does not object.

## II. CHAPMAN IS NOT ENTITLED TO A REDUCTION ON HER OFFENSE LEVEL FOR ACCEPTANCE OF RESPONSIBILITY.

Application note 4 to U.S.S.G. § 3E1.1 provides: "Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct.  There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply."  U.S.S.G. § 3E1.1 cmt n.4.  The Tenth Circuit has adopted the following test to determine whether a given case qualifies as an extraordinary case under application note 4:

> We therefore hold that in determining whether a case is "extraordinary" so as to merit both a § 3E1.1 reduction and a § 3C1.1 enhancement, the sentencing court must consider the totality of the circumstances, including, but not limited to 1) whether the obstruction of justice was an isolated incident or an on-going, systematic effort to obstruct the prosecution, and 2) whether defendant voluntarily terminated his obstructive conduct and truthfully admitted the conduct comprising the offense of conviction.

United States v. Salazar-Samaniega, 361 F.3d at 1280.  A district court must make findings to support a conclusion that a particular case qualifies as an extraordinary case.  See United States v. Salazar-Samaniega, 361 F.3d at 1280.

Chapman engaged in obstructive conduct on several different occasions.   First, while visiting Moya while he was incarcerated, Chapman told Moya that the two of them should call the payments Moya gave to Chapman personal loans to hide the fact that they were bribes.  See Re-Disclosed PSR ¶ 35, at 11.  Second, Chapman lied to FBI agents who interviewed her by telling them that the money Moya paid her was a loan for which she provided collateral.  See Re-Disclosed PSR ¶ 24, at 8.  She also related to FBI officers that she had a promissory note in her possession confirming that such a loan existed, although she could not produce the document.  See Re-

Disclosed PSR ¶ 24, at 8.  Third, during Smith's interview, Chapman told him to stop speaking to FBI officers.  See Re-Disclosed PSR ¶ 25, at 8.  Fourth, Chapman presented a forged promissory note to a grand jury.  See Re-Disclosed PSR ¶¶ 26-27, at 9.

While Chapman appears to have accepted responsibility for her offenses in a lay sense, she has not accepted responsibility for guideline purposes.  The Court does not believe that she has established either of the factors discussed in United States v. Salazar-Samaniega.  First, the obstruction of justice appears not to have been "an isolated incident" but rather "an on-going, systematic effort to obstruct the prosecution."  United States v. Salazar-Samaniega, 361 F.3d at 1280.  On several occasions, she attempted to thwart the investigation by herself engaging in dishonest conduct and by encouraging others to frustrate the investigation.  Her conduct was not an isolated incident.[4]

Second, the Court cannot say that she voluntarily terminated her obstructive conduct and truthfully admitted her conduct comprising the offense of conviction.  As the United States Court of Appeals for the Seventh Circuit stated, whose statement the Tenth Circuit quoted approvingly in United States v. Salazar-Samaniega: "The fact that a defendant having done everything he could to obstruct justice runs out of tricks, throws in the towel, and pleads guilty does not make him a prime candidate for rehabilitation."  United States v. Buckley, 192 F.3d at 711.  While the Court

---

[4]Chapman did not object to the application of a 2-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1(b)(1).  See Chapman Sentencing Memorandum at 10 ("Since it appears that Defendant Chapman's actions would meet the technical requirements for obstruction, Defendant Chapman did not file an objection to the two level increase.").  In any case, the Court concludes that such an enhancement is appropriate based on her perjurious conduct before the grand jury.  See United States v. Salazar-Samaniega, 361 F.3d at 1275 ("Application Notes 4(b) and (f) to the Guidelines give 'committing, suborning, or attempting to suborn perjury' and 'providing materially false information to a judge or magistrate' as examples of the kind of conduct that warrants a sentence increase under § 3C1.1.").

acknowledges that some mitigating circumstances would counsel in favor of a downward variance regarding why she took the bribes, there are few, if any, mitigating circumstances regarding her obstruction of justice.  Chapman made a conscious decision to obstruct this prosecution, even presenting forged documents before a grand jury -- conduct that is essentially perjurious.  See United States v. Honken, 184 F.3d 961, 972 (8th Cir. 1999)(determining that a reduction for acceptance of responsibility was not appropriate when "Appellee pursued obstruction of justice in a purposeful and methodical way").  "[C]ommitting, suborning, or attempting to suborn perjury," is a quintessential, and rather grave, example of obstruction of justice.  United States v. Salazar-Samaniega, 361 F.3d at 1275, 1280 ("First, since the district court found Salazar-Samaniega had obstructed justice through perjury at the suppression hearing, the court should not have granted Salazar-Samaniega an acceptance of responsibility adjustment.").  There is no constitutional protection permitting an individual to commit perjury.  See United States v. Dunnigan, 507 U.S. 87, 96 (1993)("[F]or we have held on a number of occasions that a defendant's right to testify does not include a right to commit perjury.").  These were not tangential misrepresentations, as they went to the heart of the issue of her guilt or innocence.  See United States v. Salazar-Samaniega, 361 F.3d at 1276 (considering the materiality of the false statements to determine whether obstruction of justice occurred).

In a lay sense, Chapman has accepted responsibility for her conduct.  By acting in this manner, however, she has not acted in an extraordinary way.  The Tenth Circuit and other circuits have taken the position that it would undermine the purpose of the guidelines to make the majority of cases extraordinary in this context.  See United States v. Chung, 261 F.3d 536, 540 (5th Cir. 2001)(noting that various circuits criticize an approach "that makes 'extraordinary' virtually all cases in which defendants stop obstructing justice and abide by a guilty plea").  See also United

States v. Salazar-Samaniega, 361 F.3d at 1276 (quoting United States v. Chung and United States v. Honken approvingly).  That she ultimately pled guilty and saved the United States the expense of trial, by itself, does not suggest that she voluntarily terminated her obstructive conduct.  See United States v. Honken, 184 F.3d at 972 ("[T]he mere fact of the guilty plea to the underlying offense, followed by an absence of post-plea obstructive conduct is not by itself sufficient to establish an extraordinary case as a matter of law . . . .").   Furthermore, there is little that is extraordinary about that conduct, as the vast majority of criminal cases terminate as the result of a defendant pleading guilty.  See Missouri v. Frye, 132 S.Ct. 1399, 1407 (2012)("Ninety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas.").  She pled guilty without the benefit of a plea agreement to a thirty-count indictment, which is somewhat unusual, but that may have been because she could not come to an agreement with the United States on a sentence as low as she wanted.  Her requested sentence of 9-months incarceration and 9-months home detention is significantly lower than the low end of the guideline range calculated in the Re-Disclosed PSR -- 121 months.  She is trying to convince the Court to vary to a considerable degree.  In the end, the most accurate classification of Chapman's conduct is that she appears to have run out of options and decided that pleading guilty was her best option under the circumstances.  "The fact that a defendant having done everything he could to obstruct justice runs out of tricks, throws in the towel, and pleads guilty does not make him a prime candidate for rehabilitation."  United States v. Buckley, 192 F.3d at 711.  While the Court acknowledges that it does not appear that she tried to destroy evidence or tamper with witnesses once charges were filed against her, the Court finds it particularly egregious that she presented forged documents to a grand jury.  Distinguishing that conduct because it occurred before the United States filed an indictment against her would be an artificial line that would encourage obstructing grand-jury investigations.

See United States v. Honken, 184 F.3d at 972 ("[T]he mere fact of the guilty plea to the underlying offense, followed by an absence of post-plea obstructive conduct is not by itself sufficient to establish an extraordinary case as a matter of law . . . .").

"[I]t is the obligation of the defendant to present evidence to support the adjustment" for acceptance of responsibility.  United States v. Salazar-Samaniega, 361 F.3d at 1280.  Ultimately, the circumstances are not extraordinary such that Chapman should receive a downward adjustment for acceptance of responsibility.  Thus, the general statement in application note 4 to U.S.S.G. § 3E1.1 is applicable.  Application note 4 to U.S.S.G. § 3E1.1 provides: "Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct."  U.S.S.G. § 3E1.1 cmt n.4 (emphasis in original).  Nothing makes this case out of the ordinary in this regard. Thus, the Court will sustain the United States' objection to the application of a reduction to Chapman's offense level for acceptance of responsibility.  Chapman's criminal offense level is consequently 34 after the Court sustains the objection to the 2-level reduction under U.S.S.G. § 3E1.1.  A criminal offense level of 34 and a criminal history category of I yields a guideline imprisonment range of 151 to 188 months.

**III.   THE COURT WILL VARY DOWNWARD FROM THE ADVISORY GUIDELINE RANGE.**

Other than with regard to the United States' objection regarding acceptance of responsibility, there are no further disputes regarding the Re-Disclosed PSR's guideline calculation.  Accordingly, other than on the issue of acceptance of responsibility, the Court will adopt the Re-Disclosed PSR's guideline calculation.  Chapman's criminal offense level is 34 after the Court sustains the objection to the 2-level reduction under U.S.S.G. § 3E1.1.  A criminal offense level of 34 and a criminal

history category of I yields a guideline imprisonment range of 151 to 188 months.

Chapman, while employed as the NMDC facilities manager, accepted numerous bribes. The Court has carefully considered the parties' arguments and the circumstances of this case. The Court has considered the guideline range for the applicable category of offense committed by the applicable category of defendant. The Court believes that the punishment that the guidelines set forth is not appropriate for Chapman's offense. The Court concludes that a sentence of 70 months for Counts 1 to 30, sentences which will run concurrently, is sufficient to reflect the seriousness of Chapman's offenses. The Court has identified eight factors that counsel in favor of a downward variance. First, it does not appear that Chapman spent most of the money on herself, but rather spent a large portion of the money to correct her son's drug problem. It is undisputed that she spent at least $60,763.37 on drug rehabilitation for her son, and possibly closer to $100,000.00, from July 2008 to June 2010. The United States disputes that there are no records of some payments to her ex-husband regarding reimbursement for rehabilitation, and Chapman has responded that not all the money in bribes she took entered her bank account such that there would be a record. That explanation is plausible given that defendants might not want to put all bribe money they have received in an account to avoid drawing too much attention. Or she may have just cashed several checks instead of depositing them. In any case, it is undisputed that she spent at least $60,763.37 on drug rehabilitation for her son. While the Court is troubled that Chapman used some of the money on cocaine for her personal use, the fact remains that she -- a mother, albeit an imperfect one -- spent a large portion of the money on her son and not on living a lavish lifestyle, such as buying expensive cars or homes. She was a desperate mother, and while many people might criticize how she handled the situation with her son, the fact remains that she was a mother trying hard to deal

with   her   son's   problems.[5]        Second,   her   former   husband   appears   to

_____

[5]Furthermore, to the extent Chapman has remained silent about information regarding herself or others engaging in criminal conduct to invoke her Fifth Amendment privilege at sentencing, the Court does not rely on that silence to increase her sentence.  See United States v. Goree, No. 11-0285, 2012 WL 592869, at *10-11 (Feb. 13, 2012)(Browning, J.).  The Court noted that it would not do so at the sentencing hearing.  See Tr. at 67:8-68:5 (Court).  As the Court discussed in United States v. Goree, however:

> The Supreme Court held in Mitchell v. United States, [526 U.S. 314 (1999)], that Fifth Amendment protections extend to sentencing, and that a court may not draw an adverse inference from a defendant's silence at sentencing in determining facts related to the circumstances and details of the crime.  See 526 U.S. at 329.  The Supreme Court refused, however, to express a view on "[w]hether silence bears upon the determination of a lack of remorse, or upon acceptance of responsibility." Mitchell v. United States, 526 U.S. at 330.  The Tenth Circuit does not appear to have addressed this issue in the context of a federal court sentencing.  In a habeas corpus case brought under 28 U.S.C. § 2254, the Tenth Circuit held that it remained "unanswered by the Supreme Court whether a sentencing court in a non-capital case may, for purposes other than determining the facts of the offense of conviction, draw an adverse inference from a criminal defendant's refusal to testify or cooperate." Lee v. Crouse, 451 F.3d 598, 605 (10th Cir. 2006).  Additionally, the Tenth Circuit has found that a district court did not commit plain error where the district court considered the defendant's refusal to cooperate with the government when sentencing the defendant to the maximum sentence under the guidelines and the defendant contended that, if he had cooperated he would have opened himself to additional criminal liability.  See United States v. Gerby, 41 F.App'x 312, 317 (10th Cir. 2002)(unpublished).  In that case, however, the defendant did not assert his fear of self-incrimination before the district court.  See United States v. Gerby, 41 F.App'x at 317.
>
> Other courts of appeals have held that silence may be important to determine lack of remorse or acceptance of responsibility, and can play a role in determining whether to reduce a sentence.  See United States v. Spotted Elk, 548 F.3d 641, 680 (8th Cir. 2008)("We have held that denial of the Guidelines' downward adjustment for acceptance of responsibility, § 3E1.1, does not violate the defendant's right to silence.").  In Burr v. Pollard, 546 F.3d 828 (7th Cir. 2008), the United States Court of Appeals for the Seventh Circuit stated:

>> [S]ilence can be consistent not only with exercising one's constitutional right, but also with a lack of remorse.  The latter is properly considered at sentencing because it speaks to traditional penological interests such as rehabilitation (an indifferent criminal isn't ready to reform) and deterrence (a remorseful criminal is less likely to return to his old ways).

have left her to handle her son's drug problem by herself in recent years, making Chapman bear the responsibility for helping her son.  Third, there is a significant chance that Chapman will never see her parents again in light of their age and the length of this sentence.  This situation is another consequence of the length of the sentence that the Court is imposing.  Fourth, Moya was ultimately the one who bribed Chapman even if she felt pressure to take the bribes in light of her financial circumstances.  Additionally, Moya is not being prosecuted for this conduct.  While that decision is in the realm of the United States' prosecutorial discretion, that consideration counsels in favor of

---

546 F.3d at 832.  See United States v. Kennedy, 499 F.3d 547, 553 (6th Cir. 2007)("[T]he district court plainly considered Kennedy's refusal to complete testing in determining his propensity for future dangerousness, rather than in determining facts of the offense. . . . [T]he district court's consideration of Kennedy's refusal was not improper. . . .").

The Court agrees with these Circuit Courts of Appeals that Mitchell v. United States does not limit the Court's ability to consider Goree's refusal to answer questions for the PSR.  It would be difficult for the Court to do its work if a defendant refused to cooperate in putting together a PSR and the USPO could not tell the Court why certain sections are absent.  Also, if a defendant refuses to accept responsibility, the Court needs to that fact [sic].  18 U.S.C. § 3661 provides that "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  18 U.S.C. § 3661.  In United States v. Watts, the Supreme Court held that this state "embodies the longstanding principle that sentencing courts have broad discretion to consider various kinds of information" and that "the Guidelines did not alter this aspect of the sentencing court's discretion."  519 U.S. 148, 151-52 (1997).  See United States v. Madrid-Gomez, 724 F.Supp.2d 1141, 1152 (D.N.M. 2010)(Browning, J.).  Accordingly, the Court will overrule Goree's objection to paragraph 56 of the Re-Disclosed PSR.

On the other hand, defendants often do not provide information on certain subjects, specifically drug use.  Goree is not alone in his selective non-disclosure.  The Court usually draws little inference from the absence of such information.  Accordingly, the Court will add a sentence to the PSR stating: "The Court does not draw an adverse inference from the Defendant's decision to follow his counsel's advice."

United States v. Goree, 2012 WL 592869, at *10-11.

some variance to avoid unwarranted sentencing disparities among similarly situated defendants.

Fifth, there is not a great deal of evidence suggesting that the State of New Mexico suffered significant harm as a result of awarding these government contracts in that there is little evidence that Moya was artificially padding the contracts. By and large, it received the products and services for which it paid at a price close to the value of the products and services it would have owed. Sixth, while Chapman is not entitled to a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, the Court concludes that she is truly remorseful for her conduct and has acknowledged her wrongdoing. She has also largely been cooperative, as opposed to obstructive, once the United States filed charges against her. Furthermore, she has pled guilty to a thirty-count indictment without the benefit of a plea agreement, thus largely leaving it in the Court's discretion to determine what is an appropriate sentence. Seventh, she has largely consented to some level of remuneration to the appropriate governmental entities to try and correct some of the wrongs she has done. On August 22, 2011, Chapman consented to the entry of a Consent Order of Forfeiture (Money Judgment) where she "agreed to forfeit $237,080.00 representing the proceeds of her offense, to the United States in the form of a money judgment." Consent Order of Forfeiture (Money Judgment) at 1. That amount is the entire amount in bribes she took. See Re-Disclosed PSR ¶ 6, at 3-4.

Lastly, and perhaps most importantly, as far as the Court's personal experience and research has uncovered, public officials and some individuals in non-public, but comparable, positions charged with crimes in similar cases in this District have also received lower sentences than the bottom of Chapman's guideline range. For instance, in 2009, Manny Aragon, a former president pro tem of the New Mexico Senate, received a sentence of 67-months imprisonment pursuant to a rule 11(c)(1)(c) plea agreement; he faced charges regarding a fraud conspiracy that related to over-billing the State of New Mexico for expenditures in which Aragon was to receive over $600,000.00.

See United States v. Aragon, No. 07-0615, Plea Agreement ¶¶ 3, 7-8, at 2, 4-7, filed October 15, 2008 (D.N.M.)(Doc. 611)("Aragon Plea"); United States v. Aragon, No. 07-0615, Judgment in a Criminal Case at 2, filed April 29, 2009 (D.N.M.)(Doc. 824). While the Court acknowledges that there was a rule 11(c)(1)(C) agreement in that case and that Aragon waived his right to appeal, see Aragon Plea ¶ 11, at 8, the loss to the State of New Mexico appears to have been greater in that case than in this case. Another co-defendant in that case, Raul Parra, admitted to taking "approximately $3.3 million in proceeds from . . . fraudulent overbillings," most of which Parra gave to his co-defendants. See United States v. Parra, No. 07-0615, Plea Agreement ¶ 7, at 4-6, filed October 14, 2008 (D.N.M.)(Doc. 610)("Parra Plea"). Parra agreed to a sentence that would not be greater than 71-months imprisonment and did not waive his appellate rights. See Parra Plea ¶¶ 8, 15, at 7, 12. He ultimately received a sentence of 46 months following a departure under U.S.S.G. § 5K1.1. See United States v. Parra, No. 07-0615, Clerk's Minutes at 2, filed March 17, 2009 (D.N.M.)(Doc. 782); United States v. Parra, No. 07-0615, Judgment in a Criminal Case at 2, filed April 30, 2009 (D.N.M.)(Doc. 825). Another co-defendant in that case, Toby Martinez -- a former administrator of the Bernalillo County Metropolitan Court -- stipulated to an amount of loss attributable to his conduct that was "more than $1,500,000.00 but not more than $2,500,000.00." United States v. Martinez, No. 07-0615, Plea Agreement ¶ 8, at 10, filed October 10, 2008 (D.N.M.)(Doc. 578). He ultimately received a sentence of 67 months. See No. 07-0615, Judgment in a Criminal Case at 2, filed May 5, 2009 (D.N.M.)(Doc. 827).

The Court might, on a clean slate, believe that the United States Attorney's Office has agreed to too steep of a variance in some of the rule 11(c)(1)(C) agreements, or that this District's district judges have varied too much in some public corruption cases. While the Court, from its research regarding sentences for defendants convicted of similar offenses in this District and in other districts,

first concluded that sentences in the District of New Mexico for these offenses may be more lenient

than in the rest of the country, it appears that the District of New Mexico varies downward from the

guidelines less frequently than the nationwide average.  See U.S. Sentencing Comm'n, Fiscal Year

2011 Guideline Sentences: National Data 1 (2012), available at

http://www.ussc.gov/Data_and_Statistics/Annual_Reports_and_Sourcebooks/2011/Stats_Nat.pdf

(noting that 54.5% of sentences nationwide are within the guideline range and that 13.4% of

sentences are below the guideline range based on variances under United States v. Booker, 543 U.S.

220 (2005)); U.S. Sentencing Comm'n, Fiscal Year 2011 Guidelines Sentences: New Mexico 1

( 2 0 1 2 ) ,     a v a i l a b l e   a t

http://www.ussc.gov/Data_and_Statistics/Annual_Reports_and_Sourcebooks/2011/Stats_NM.pdf

(noting that 62.4% of sentences in the District of New Mexico are within the guideline range and

that 5.6% of sentences are below the guideline range based on variances under United States v.

Booker).  In any case, the reality is that to sentence Chapman to 151 months would result in the

introduction of unwarranted sentencing disparities among defendants in the District who have been

found guilty of similar conduct.  The case has received considerable publicity, as did Aragon's case.

It is difficult to sentence her to a higher sentence than Aragon's sentence, or at least much higher,

particularly in light of his higher public position.  The public -- particularly in New Mexico where

the public will have more interest in the case -- might lose respect for the law if they see Aragon

receive 67 months and Chapman receive 151 months.

Chapman has also asked the Court to consider the sentence that the Court gave Robert Vigil

in 2007 -- a sentence of 37-months imprisonment.  See United States v. Vigil, No. 05-2051,

Judgment in a Criminal Case at 2, filed February 22, 2007 (D.N.M.)(Doc. 456)(Browning, J.).  The

charges against Vigil related to abuse of his position as the head of the New Mexico State

Treasurer's Office, including charges of extortion.  See United States v. Vigil, 476 F.Supp.2d 1231, 1242 (D.N.M. 2007)(Browning, J.).  After the jury in the first trial hung, the jury in the retrial, one of the most publicized trials in New Mexico history, acquitted Vigil on twenty-three counts and convicted him on one count.  See United States v. Vigil, No. 05-2051, Verdict at 1-5, filed September 30, 2006 (D.N.M.)(Doc. 408)(Browning, J.).  The jury convicted Vigil of attempt to extort property by wrongful use and threat of use of economic harm, and under color of official right, in violation of 18 U.S.C. § 1951(b)(2).  See United States v. Vigil, 476 F.Supp.2d at 1240. The Court calculated a guideline imprisonment range of "235 to 240 months."  United States v. Vigil, 476 F.Supp.2d at 1298.  The relevant conduct under the guidelines included some of the conduct for which Vigil was acquitted, increasing dramatically his sentencing range.  See United States v. Vigil, 476 F.Supp.2d at 1290-97.  While the jury did not find that some of the alleged criminal conduct occurred beyond a reasonable doubt, the Court found that some of the conduct occurred by a preponderance of the evidence.  See United States v. Vigil, 476 F.Supp.2d at 1290-97. See also United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1993)(recognizing "the strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof" but concluding that "the Due Process Clause does not require sentencing facts in the ordinary case to be proved by more than a preponderance standard").  The USPO recommended that the Court impose a downward variance for the following reasons, but did not specify a specific recommended sentence:

> In this case, when looking at the nature and circumstances of the offense and the history and characteristics of the defendant, the Court should consider several factors.  Robert Vigil is currently 53 years old and this is his first contact with law enforcement or any Court.  Additionally, the defendant has no history of violence. Mr. Vigil is a very educated person, and has maintained a stable employment history for his adult life.

United States v. Vigil, 476 F.Supp.2d at 1244.

The Court ultimately sentenced Vigil to 37-months imprisonment.  See United States v. Vigil, 476 F.Supp.2d at 1324.  In arriving at its sentence, the Court found it significant that: (i) the jury had acquitted Vigil on twenty-three counts; (ii) that Vigil had been acquitted of much of the relevant criminal conduct at issue; (iii) the length of a guideline sentence in light of his acquittal on twenty-three counts; (iv) the significant damage to Vigil's reputation and his high legal bills; (v) the relatively low need for specific deterrence to Vigil in light of his age; and (vi) the likelihood that his co-defendants would receive lighter sentences based on entering into plea agreements.  United States v. Vigil, 476 F.Supp.2d at 1306-24.  Most importantly, however, the Court concluded that sentencing Vigil to 235 months, a sentencing length reflecting his relevant conduct under the guidelines, after he had been acquitted at trial on twenty-three counts would not promote respect for the law and would not result in a just sentence.  See United States v. Vigil, 476 F.Supp.2d at 1322 ("While the Court cannot say that this case falls outside the heartland of traditional extortion cases, the advisory guideline sentence in Vigil's case is too harsh and is greater than necessary to satisfy federal sentencing goals.").

The Court has considered the guidelines, but, in arriving at its sentence, has taken into account not only the guidelines but other sentencing goals.  The Court believes that a sentence of 70 months for Counts 1 to 30, sentences which will run concurrently, is appropriate to reflect the seriousness of Chapman's crimes.  While the Court acknowledges that there are some mitigating circumstances that counsel in favor of a variance, a sentence of 9-months incarceration and 9-months home detention is too lenient to adequately reflect all of the factors in 18 U.S.C. § 3553(a).  That variance would be far lower than the bottom of the guideline range -- 151 months.  Chapman has committed serious crimes and engaged in highly obstructive conduct to avoid prosecution.

Sentencing her to 9-months incarceration and 9-months home detention would send the wrong message to her and to the public.  A sentence of 70 months is equivalent to a sentence at the middle of the guideline range that would result from an 8-level downward departure on her offense level, which yields an offense level of 26.  An offense level of 26 and a criminal history category of I yields a guideline range of 63 to 78 months.  Other conditions that the Court will require as part of supervised release will also provide Chapman with some needed education, training, and care to prevent these problems from reoccurring, such as her cocaine use.

While the Court concludes that she should not be sentenced much more than Aragon, the Court also concludes that she should not be sentenced to less.  A sentence of 9-months incarceration and 9-months home confinement would not reflect the seriousness of her crimes, promote respect for the law, or deter the general public from committing similar crimes in New Mexico.  While the amount of money involved is lower than in Aragon's case, and she was not as prominent of an individual as Aragon, her obstruction of justice is disturbing.  Furthermore, unlike Vigil, she has not been acquitted of any conduct, whereas Vigil had the jury acquit him on twenty-three counts.  The jury's verdict weighed heavily on the Court in arriving at its sentence for Vigil along with what the Court felt was an unnecessarily high guideline range in light of the verdict.  Thus, it is difficult to compare Vigil's situation to Chapman's situation -- who pled guilty to all thirty counts in the indictment.  Nevertheless, the Court acknowledges that, much like Vigil, there is a relatively low need to emphasize specific deterrence to Chapman.  Additionally, the Court has already taken into account as a factor for a variance that Moya has not faced any criminal charges for his offenses.  Consequently, the Court concludes that, given her obstructive conduct, a sentence slightly higher than Aragon's is appropriate.  A sentence in the middle of the range of 63 to 78 months, a sentence slightly higher than Aragon's sentence, is appropriate.

This sentence adequately reflects the seriousness of the offenses, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, avoids unwarranted sentencing disparities among similarly situated defendants, and otherwise fully reflects each of the factors embodied in 18 U.S.C. § 3553(a).  Given that Chapman has no criminal history, that she will be approaching sixty years old when she leaves prison, and that she is receiving a sentence of over five-years imprisonment for her first offense, the Court concludes that the sentence reflects the seriousness of the offenses, promotes respect for the law, and provides just punishment.  Given that Chapman, a public official with an otherwise clean record, is going to federal prison for over five years, the Court believes that the sentence affords adequate deterrence to Chapman specifically and to the public generally.  She will be approaching sixty when she completes her sentence, and her risk of recidivism will decrease as a result of her age upon release.  Thus, the Court believes that her sentence protects the public.  Additionally, given the sentences similar defendants like Aragon have received and her lack of criminal history, the Court believes that the sentence avoids unwarranted sentencing disparities among similarly situated defendants.  While the Court's task, as a district court, is not to arrive at a reasonable sentence -- it is to come up with one that reflects the factors in 18 U.S.C. § 3553(a), see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence.  Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." (citation omitted)) -- the Court believes that this sentence is reasonable, that it is more reasonable than a guideline sentence, and that it best reflects the factors in 18 U.S.C. § 3553(a).  And perhaps most important in this calculation, the Court believes that this sentence is sufficient without being greater than necessary to comply with the purposes of punishment Congress set forth in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat.

1987 (codified as amended in scattered sections of 18 U.S.C.).  The Court doubts that the judicial system will see Chapman again, and the sentence is a severe one for any public official that dares to engage in similar conduct.  The Court sentences Chapman to 70-months imprisonment for Counts 1 to 30, sentences which will run concurrently.

**IT IS ORDERED** that the objections contained in the United States' Sentencing Memorandum, filed February 13, 2012 (Doc. 42), are sustained in part and overruled in part.  The Court will deny the request in the USA Sentencing Memorandum for a sentence within the advisory guideline range.  The Court will grant in party and deny in part the request for a downward variance contained in the Defendant's Sealed Sentencing Memorandum, filed March 6, 2012 (Doc. 51).  The Court will vary downward to a sentence of 70-months imprisonment for each count, sentences which will run concurrently, but will not vary downward to a sentence of 9-months imprisonment and 9-months home detention.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
  United States Attorney
Tara C. Neda
Cynthia L. Weisman
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Jacquelyn Robins
Albuquerque, New Mexico

     *Attorney for the Defendant*

-33-