# UNITED STATES DISTRICT COURT
**District of New Mexico**

| | |
|---|---|
| UNITED STATES OF AMERICA<br>V.<br>**Laurie Chapman** | **Judgment in a Criminal Case**<br><br>(For Offenses Committed On or After November 1, 1987)<br>Case Number: **1:11CR00904-001JB**<br>USM Number: **61885-051**<br>Defense Attorney: **Jacquelyn Robins, Appointed** |

THE DEFENDANT:

☒ pleaded guilty to count(s) **1 through 30 of Indictment**
☐ pleaded nolo contendere to count(s)   which was accepted by the court.
☐ after a plea of not guilty was found guilty on count(s)

The defendant is adjudicated guilty of these offenses:

| *Title and Section* | *Nature of Offense* | *Offense Ended* | *Count Number(s)* |
|---|---|---|---|
| 18 U.S.C. Sec. 666(a)(1)(B) | Theft or Bribery Concerning Programs Receiving Federal Funds | 02/22/2007 | 1 |
| 18 U.S.C. Sec. 666(a)(1)(B) | Theft or Bribery Concerning Programs Receiving Federal Funds | 09/11/2007 | 2 |

The defendant is sentenced as provided in pages 2 through **11** of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count .
☐ Count   dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

**March 20, 2012**
Date of Imposition of Judgment

**/s/ James O. Browning**
Signature of Judge

**Honorable James O. Browning**
**United States District Judge**
Name and Title of Judge

**June 27, 2012**
Date Signed

Defendant: **Laurie Chapman**
Case Number: **1:11CR00904-001JB**

# ADDITIONAL COUNTS OF CONVICTION

| Title and Section | Nature of Offense | Offense Ended | Count Number(s) |
|---|---|---|---|
| 18 U.S.C. Sec. 666(a)(1)(B) | Theft or Bribery Concerning Programs Receiving Federal Funds | 02/19/2008 | 3 |
| 18 U.S.C. Sec. 666(a)(1)(B) | Theft or Bribery Concerning Programs Receiving Federal Funds | 02/26/2008 | 4 |
| 18 U.S.C. Sec. 666(a)(1)(B) | Theft or Bribery Concerning Programs Receiving Federal Funds | 03/19/2008 | 5 |
| 18 U.S.C. Sec. 666(a)(1)(B) | Theft or Bribery Concerning Programs Receiving Federal Funds | 04/04/2008 | 6 |
| 18 U.S.C. Sec. 666(a)(1)(B) | Theft or Bribery Concerning Programs Receiving Federal Funds | 04/30/2008 | 7 |
| 18 U.S.C. Sec. 666(a)(1)(B) | Theft or Bribery Concerning Programs Receiving Federal Funds | 05/02/2008 | 8 |
| 18 U.S.C. Sec. 666(a)(1)(B) | Theft or Bribery Concerning Programs Receiving Federal Funds | 05/07/2008 | 9 |
| 18 U.S.C. Sec. 666(a)(1)(B) | Theft or Bribery Concerning Programs Receiving Federal Funds | 05/15/2008 | 10 |
| 18 U.S.C. Sec. 666(a)(1)(B) | Theft or Bribery Concerning Programs Receiving Federal Funds | 05/19/2008 | 11 |
| 18 U.S.C. Sec. 666(a)(1)(B) | Theft or Bribery Concerning Programs Receiving Federal Funds | 05/27/2008 | 12 |
| 18 U.S.C. Sec. 666(a)(1)(B) | Theft or Bribery Concerning Programs Receiving Federal Funds | 05/28/2008 | 13 |
| 18 U.S.C. Sec. 666(a)(1)(B) | Theft or Bribery Concerning Programs Receiving Federal Funds | 06/23/2008 | 14 |
| 18 U.S.C. Sec. 666(a)(1)(B) | Theft or Bribery Concerning Programs Receiving Federal Funds | 06/25/2008 | 15 |
| 18 U.S.C. Sec. 666(a)(1)(B) | Theft or Bribery Concerning Programs Receiving Federal Funds | 07/03/2008 | 16 |
| 18 U.S.C. Sec. 666(a)(1)(B) | Theft or Bribery Concerning Programs Receiving Federal Funds | 07/11/2008 | 17 |
| 18 U.S.C. Sec. 666(a)(1)(B) | Theft or Bribery Concerning Programs Receiving Federal Funds | 08/04/2008 | 18 |

| | | | |
|---|---|---|---|
| 18 U.S.C. Sec. 666(a)(1)(B) | Theft or Bribery Concerning Programs Receiving Federal Funds | 08/25/2008 | 19 |
| 18 U.S.C. Sec. 666(a)(1)(B) | Theft or Bribery Concerning Programs Receiving Federal Funds | 09/02/2008 | 20 |
| 18 U.S.C. Sec. 666(a)(1)(B) | Theft or Bribery Concerning Programs Receiving Federal Funds | 10/17/2008 | 21 |
| 18 U.S.C. Sec. 666(a)(1)(B) | Theft or Bribery Concerning Programs Receiving Federal Funds | 12/11/2008 | 22 |
| 18 U.S.C. Sec. 666(a)(1)(B) | Theft or Bribery Concerning Programs Receiving Federal Funds | 02/17/2009 | 23 |
| 18 U.S.C. Sec. 666(a)(1)(B) | Theft or Bribery Concerning Programs Receiving Federal Funds | 02/24/2009 | 24 |
| 18 U.S.C. Sec. 666(a)(1)(B) | Theft or Bribery Concerning Programs Receiving Federal Funds | 04/08/2009 | 25 |
| 18 U.S.C. Sec. 666(a)(1)(B) | Theft or Bribery Concerning Programs Receiving Federal Funds | 05/20/2009 | 26 |
| 18 U.S.C. Sec. 666(a)(1)(B) | Theft or Bribery Concerning Programs Receiving Federal Funds | 05/29/2009 | 27 |
| 18 U.S.C. Sec. 666(a)(1)(B) | Theft or Bribery Concerning Programs Receiving Federal Funds | 07/07/2009 | 28 |
| 18 U.S.C. Sec. 666(a)(1)(B) | Theft or Bribery Concerning Programs Receiving Federal Funds | 08/04/2009 | 29 |
| 18 U.S.C. Sec. 666(a)(1)(B) | Theft or Bribery Concerning Programs Receiving Federal Funds | 08/19/2009 | 30 |

Defendant: **Laurie Chapman**
Case Number: **1:11CR00904-001JB**

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of **70 months**.

**A term of 70 months is imposed as to each of Counts 1 through 30; said terms shall run concurrently.**

The Court incorporates by reference its Unsealed Memorandum Opinion and Order, filed June 22, 2012 (Doc. 66)("MOO"). On April 13, 2011, the grand jury issued an Indictment charging Chapman with thirty counts asserting that she violated 18 U.S.C. §§ 2 and 666(a)(1)(B), that being theft or bribery concerning programs receiving federal funds. See Doc. 1. On July 28, 2011, Chapman pled guilty to the Indictment before the Honorable Karen B. Molzen, Chief United States Magistrate Judge, without a plea agreement. See Plea Minute Sheet at 1, filed July 28, 2011 (Doc. 22).

The United States Probation Office ("USPO") disclosed a Presentence Investigation Report for Chapman on October 19, 2011. On March 12, 2012, the USPO disclosed the Re-Disclosed Presentence Investigation Report ("Re-Disclosed PSR") to supplement a variety of information in the PSR largely based on additional information Chapman provided to the USPO. In the Re-Disclosed PSR, the USPO calculates Chapman`s total offense level to be 32. See Re-Disclosed PSR ¶ 58, at 18. The Re-Disclosed PSR applies a base offense level of 14 pursuant to U.S.S.G. § 2C1.1(a)(1). See Re-Disclosed PSR ¶ 49, at 15. The Re-Disclosed PSR includes a 2-level upward adjustment under U.S.S.G. § 2C1.1(b)(1) given that "the offense involved more than one bribe or extortion." Re-Disclosed PSR ¶ 50, at 15. The Re-Disclosed PSR includes a 12-level upward adjustment under U.S.S.G. § 2C1.1(b)(2) given that Chapman received more than $200,000.00 but less than $400,000.00 in bribes. See Re-Disclosed PSR ¶ 51, at 15. The Re-Disclosed PSR includes a 4-level upward adjustment under U.S.S.G. § 2C1.1(b)(3) given that "the offense involved an elected public official or any public official in a high level decision making or sensitive position." Re-Disclosed PSR ¶ 52, at 15. The Re-Disclosed PSR includes a 2-level upward adjustment under U.S.S.G. § 3C1.1(b)(1) given that Chapman obstructed justice on several occasions, including: (i) her visit to Anthony Moya while he was incarcerated where she told him to refer to the bribes as personal loans; (ii) her interview with the FBI where she lied about various details, including whether the bribes were personal loans and the existence of a promissory note; (iii) her instruction to Smith not to answer any of the FBI`s questions; and (iv) her presentation of a forged promissory note to a grand jury. See Re-Disclosed PSR ¶ 55, at 16-17. The Re-Disclosed PSR includes a 2-level reduction under U.S.S.G. § 3E1.1 based on an assertion that there are extraordinary circumstances in this case that support Chapman`s acceptance of responsibility in spite of her obstruction of justice. See Re-Disclosed PSR ¶ 57, at 17. The Re-Disclosed PSR notes that, in support of this reduction: (i) Chapman pled guilty to a thirty-count indictment; (ii) she pled guilty before the United States had to prepare for trial; (iii) her obstruction of justice occurred before federal officials filed formal charges against her; and (iv) she has not sought to destroy evidence or to intimidate witnesses. The Re-Disclosed PSR lists her criminal history category as I, based on 0 criminal history points. See Re-Disclosed PSR ¶ 61, at 18. The Re-Disclosed PSR calculates that an offense level of 32 and a criminal history category of I results in a guideline imprisonment range of 121 to 151 months. See Re-Disclosed PSR ¶ 118, at 35.

Chapman asks the Court for a sentence of 9-months incarceration and 9-months home detention. Plaintiff United States of America has asserted that the Court should impose a guideline sentence and should not vary downward from the advisory guideline range. In its MOO, the Court sustained the United States` objection to the PSR`s application of a 2-level reduction on Chapman`s offense level for acceptance of responsibility under U.S.S.G. § 3E1.1. See MOO at 1-2. Other than on the issue of acceptance of responsibility, the Court adopts the sentencing calculation in the Re-Disclosed PSR as its own. A criminal offense level of 34 and a criminal history category of I yields a guideline imprisonment range of 151 to 188 months.

Chapman, while employed as the New Mexico Department of Corrections facilities manager, accepted numerous bribes. The Court has carefully considered the parties` arguments and the circumstances of this case. The Court has considered the guideline range for the applicable category of offense committed by the applicable category of defendant. The Court believes that the punishment that the guidelines set forth is not appropriate for Chapman`s offense. The Court concludes that a sentence of 70 months for Counts 1 to 30, sentences which will run concurrently, is sufficient to reflect the seriousness of Chapman`s offenses. The Court has identified eight factors that counsel in favor of a downward variance. First, it does not appear that Chapman spent most of the money on herself, but rather spent a large portion of the money to correct her son`s drug problem. It is undisputed that she spent at least $60,763.37 on drug rehabilitation for her son, and possibly closer to $100,000.00, from July 2008 to June 2010. The United States disputes that there are no records of some payments to her ex-husband regarding reimbursement for rehabilitation, and Chapman has responded that not all the money in bribes she took entered her bank account such that there

would be a record. That explanation is plausible given that defendants might not want to put all bribe money they have received in an account to avoid drawing too much attention. Or she may have just cashed several checks instead of depositing them. In any case, it is undisputed that she spent at least $60,763.37 on drug rehabilitation for her son. While the Court is troubled that Chapman used some of the money on cocaine for her personal use, the fact remains that she -- a mother, albeit an imperfect one -- spent a large portion of the money on her son and not on living a lavish lifestyle, such as buying expensive cars or homes. She was a desperate mother, and while many people might criticize how she handled the situation with her son, the fact remains that she was a mother trying hard to deal with her son`s problems. Second, her former husband appears to have left her to handle her son`s drug problem by herself in recent years, making Chapman bear the responsibility for helping her son. Third, there is a significant chance that Chapman will never see her parents again in light of their age and the length of this sentence. Her parents are in their nineties. This situation is another consequence of the length of the sentence that the Court is imposing. Fourth, Moya was ultimately the one who bribed Chapman even if she felt pressure to take the bribes in light of her financial circumstances. Additionally, Moya is not being prosecuted for this conduct. While that decision is in the realm of the United States` prosecutorial discretion, that consideration counsels in favor of some variance to avoid unwarranted sentencing disparities among similarly situated defendants.

Fifth, there is not a great deal of evidence suggesting that the State of New Mexico suffered significant harm as a result of awarding these government contracts in that there is little evidence that Moya was artificially padding the contracts. By and large, it received the products and services for which it paid at a price close to the value of the products and services it would have owed. Sixth, while Chapman is not entitled to a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, the Court concludes that she is truly remorseful for her conduct and has acknowledged her wrongdoing. She has also largely been cooperative, as opposed to obstructive, once the United States filed charges against her. Furthermore, she has pled guilty to a thirty-count indictment without the benefit of a plea agreement, thus largely leaving it in the Court`s discretion to determine what is an appropriate sentence. Seventh, she has largely consented to some level of remuneration to the appropriate governmental entities to try and correct some of the wrongs she has done. On August 22, 2011, Chapman consented to the entry of a Consent Order of Forfeiture (Money Judgment) where she "agreed to forfeit $237,080.00 representing the proceeds of her offense, to the United States in the form of a money judgment." Consent Order of Forfeiture (Money Judgment) at 1. That amount is the entire amount in bribes she took. See Re-Disclosed PSR ¶ 6, at 3-4.

Lastly, and perhaps most importantly, as far as the Court`s personal experience and research has uncovered, public officials and some individuals in non-public, but comparable, positions charged with crimes in similar cases in this District have also received lower sentences than the bottom of Chapman`s guideline range. For instance, in 2009, Manny Aragon, a former president pro tem of the New Mexico Senate, received a sentence of 67-months imprisonment pursuant to a rule 11(c)(1)(c) plea agreement; he faced charges regarding a fraud conspiracy that related to over-billing the State of New Mexico for expenditures in which Aragon was to receive over $600,000.00. See United States v. Aragon, No. 07-0615, Plea Agreement ¶¶ 3, 7-8, at 2, 4-7, filed October 15, 2008 (D.N.M.)(Doc. 611)("Aragon Plea"); United States v. Aragon, No. 07-0615, Judgment in a Criminal Case at 2, filed April 29, 2009 (D.N.M.)(Doc. 824). While the Court acknowledges that there was a rule 11(c)(1)(C) agreement in that case and that Aragon waived his right to appeal, see Aragon Plea ¶ 11, at 8, the loss to the State of New Mexico appears to have been greater in that case than in this case. Another co-defendant in that case, Raul Parra, admitted to taking "approximately $3.3 million in proceeds from . . . fraudulent overbillings," most of which Parra gave to his co-defendants. See United States v. Parra, No. 07-0615, Plea Agreement ¶ 7, at 4-6, filed October 14, 2008 (D.N.M.)(Doc. 610)("Parra Plea"). Parra agreed to a sentence that would not be greater than 71-months imprisonment and did not waive his appellate rights. See Parra Plea ¶¶ 8, 15, at 7, 12. He ultimately received a sentence of 46 months following a departure under U.S.S.G. § 5K1.1. See United States v. Parra, No. 07-0615, Clerk`s Minutes at 2, filed March 17, 2009 (D.N.M.)(Doc. 782); United States v. Parra, No. 07-0615, Judgment in a Criminal Case at 2, filed April 30, 2009 (D.N.M.)(Doc. 825). Another co-defendant in that case, Toby Martinez -- a former administrator of the Bernalillo County Metropolitan Court, stipulated to an amount of loss attributable to his conduct that was "more than $1,500,000.00 but not more than $2,500,000.00." United States v. Martinez, No. 07-0615, Plea Agreement ¶ 8, at 10, filed October 10, 2008 (D.N.M.)(Doc. 578). He ultimately received a sentence of 67 months. See No. 07-0615, Judgment in a Criminal Case at 2, filed May 5, 2009 (D.N.M.)(Doc. 827).

The Court might, on a clean slate, believe that the United States Attorney`s Office has agreed to too steep of a variance in some of the rule 11(c)(1)(C) agreements, or that this District`s district judges have varied too much in some public corruption cases. While the Court, from its research regarding sentences for defendants convicted of similar offenses in this District and in other districts, first concluded that sentences in the District of New Mexico for these offenses may be more lenient than in the rest of the country, it appears that the District of New Mexico varies downward from the guidelines less frequently than the nationwide average. See U.S. Sentencing Comm`n, Fiscal Year 2011 Guideline Sentences: National Data 1 (2012), available at http://www.ussc.gov/Data_and_Statistics/Annual_Reports_and_Sourcebooks/2011/Stats_Nat.pdf (noting that 54.5% of sentences nationwide are within the guideline range and that 13.4% of sentences are below the guideline range based on variances under United States v. Booker, 543 U.S. 220 (2005)); U.S. Sentencing Comm`n, Fiscal Year 2011 Guidelines Sentences: New Mexico 1 (2012), available at http://www.ussc.gov/Data_and_Statistics/Annual_Reports_and_Sourcebooks/2011/Stats_NM.pdf (noting that

62.4% of sentences in the District of New Mexico are within the guideline range and that 5.6% of sentences are below the guideline range based on variances under United States v. Booker). In any case, the reality is that to sentence Chapman to 151 months would result in the introduction of unwarranted sentencing disparities among defendants in the district who have been found guilty of similar conduct. The case has received considerable publicity, as did Aragon`s case. It is difficult to sentence her to a higher sentence than Aragon`s sentence, or at least much higher, particularly in light of his higher public position. The public -- particularly in New Mexico where the public will have more interest in the case -- might lose respect for the law if they see Aragon receive 67 months and Chapman receive 151 months.

Chapman has also asked the Court to consider the sentence that the Court gave Robert Vigil in 2007 -- a sentence of 37-months imprisonment. See United States v. Vigil, No. 05-2051, Judgment in a Criminal Case at 2, filed February 22, 2007 (D.N.M.)(Doc. 456)(Browning, J.). The charges against Vigil related to abuse of his position as the head of the New Mexico State Treasurer`s Office, including charges of extortion. See United States v. Vigil, 476 F.Supp.2d 1231, 1242 (D.N.M. 2007)(Browning, J.). After the jury in the first trial hung, the jury in the retrial, one of the most publicized trials in New Mexico history, acquitted Vigil on twenty-three counts and convicted him on one count. See United States v. Vigil, No. 05-2051, Verdict at 1-5, filed September 30, 2006 (D.N.M.)(Doc. 408)(Browning, J.). The jury convicted Vigil of attempt to extort property by wrongful use and threat of use of economic harm, and under color of official right in violation of 18 U.S.C. § 1951(b)(2). See United States v. Vigil, 476 F.Supp.2d at 1240. The Court calculated a guideline imprisonment range of "235 to 240 months." United States v. Vigil, 476 F.Supp.2d at 1298. The relevant conduct under the guidelines included some of the conduct for which Vigil was acquitted, increasing dramatically his sentencing range. See United States v. Vigil, 476 F.Supp.2d at 1290-97. While the jury did not find that some of the alleged criminal conduct occurred beyond a reasonable doubt, the Court found that some of the conduct occurred by a preponderance of the evidence. See United States v. Vigil, 476 F.Supp.2d at 1290-97. See also United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1993)(recognizing "the strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof" but concluding that "the Due Process Clause does not require sentencing facts in the ordinary case to be proved by more than a preponderance standard"). The USPO recommended that the Court impose a downward variance for the following reasons, but did not specify a specific recommended sentence: "In this case, when looking at the nature and circumstances of the offense and the history and characteristics of the defendant, the Court should consider several factors. Robert Vigil is currently 53 years old and this is his first contact with law enforcement or any Court. Additionally, the defendant has no history of violence. Mr. Vigil is a very educated person, and has maintained a stable employment history for his adult life." United States v. Vigil, 476 F.Supp.2d at 1244.

The Court ultimately sentenced Vigil to 37-months imprisonment. See United States v. Vigil, 476 F.Supp.2d at 1324. In arriving at its sentence, the Court found it significant that: (i) the jury had acquitted Vigil on twenty-three counts; (ii) that Vigil had been acquitted of much of the relevant criminal conduct at issue; (iii) the length of a guideline sentence in light of his acquittal on twenty-three counts; (iv) the significant damage to Vigil`s reputation and his high legal bills; (v) the relatively low need for specific deterrence to Vigil in light of his age; and (vi) the likelihood that his co-defendants would receive lighter sentences based on entering into plea agreements. United States v. Vigil, 476 F.Supp.2d at 1306-24. Most importantly, however, the Court concluded that sentencing Vigil to 235 months, a sentencing length reflecting his relevant conduct under the guidelines, after he had been acquitted at trial on twenty-three counts would not promote respect for the law and would not result in a just sentence. See United States v. Vigil, 476 F.Supp.2d at 1322 ("While the Court cannot say that this case falls outside the heartland of traditional extortion cases, the advisory guideline sentence in Vigil`s case is too harsh and is greater than necessary to satisfy federal sentencing goals.").

The Court has considered the guidelines, but, in arriving at its sentence, has taken into account not only the guidelines but other sentencing goals. The Court believes that a sentence of 70 months for Counts 1 to 30, which will run concurrently, is appropriate to reflect the seriousness of Chapman`s crimes. While the Court acknowledges that there are some mitigating circumstances that counsel in favor of a variance, a sentence of 9-months incarceration and 9-months home detention is too lenient to adequately reflect all of the factors in 18 U.S.C. § 3553(a). That variance would be far lower than the bottom of the guideline range -- 151 months. Chapman has committed serious crimes and engaged in highly obstructive conduct to avoid prosecution. Sentencing her to 9-months incarceration and 9-months home detention would send the wrong message to her and to the public. A sentence of 70 months is equivalent to a sentence at the middle of the guideline range that would result from an 8-level downward departure on her offense level, which yields an offense level of 26. An offense level of 26 and a criminal history category of I yields a guideline range of 63 to 78 months. Other conditions that the Court will require as part of supervised release will also provide Chapman with some needed education, training, and care to prevent these problems from reoccurring, such as her cocaine use.

While the Court concludes that she should not be sentenced much more than Aragon, the Court also concludes that she should not be sentenced to less. A sentence of 9-months incarceration and 9-months home confinement would not reflect the seriousness of her crimes, promote respect for the law, or deter the general public from committing similar crimes in New Mexico. While the amount of money involved is lower, and she was not as prominent of an individual as Aragon, her obstruction of justice is disturbing. Furthermore, unlike Vigil, she has not been acquitted of any conduct, whereas Vigil had the jury acquit him on twenty-three

counts. The jury`s verdict weighed heavily on the Court in arriving at its sentence for Vigil along with what the Court felt was an unnecessarily high guideline range in light of the verdict. Thus, it is difficult to compare Vigil`s situation to Chapman`s situation -- who pled guilty to all thirty counts in the indictment. Nevertheless, the Court acknowledges that, much like Vigil, there is a relatively low need to emphasize specific deterrence to Chapman. Additionally, the Court has already taken into account as a factor for a variance that Moya has not faced any criminal charges for his offenses. Consequently, the Court concludes that, given her obstructive conduct, a sentence slightly higher than Aragon`s is appropriate. A sentence in the middle of the range of 63 to 78 months, a sentence slightly higher than Aragon`s sentence, is appropriate.

This sentence adequately reflects the seriousness of the offenses, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, avoids unwarranted sentencing disparities among similarly situated defendants, and otherwise fully reflects each of the factors embodied in 18 U.S.C. § 3553(a). Given that Chapman has no criminal history, that she will be approaching sixty years old when she leaves prison, and that she is receiving a sentence of over five-years imprisonment for her first offense, the Court concludes that the sentence reflects the seriousness of the offenses, promotes respect for the law, and provides just punishment. Given that Chapman, a public official with an otherwise clean record, is going to federal prison for over five years, the Court believes that the sentence affords adequate deterrence to Chapman specifically and to the public generally. She will be approaching sixty when she completes her sentence, and her risk of recidivism will decrease as a result of her age upon release. Thus, the Court believes that her sentence protects the public. Additionally, given the sentences similar defendants like Aragon have received and her lack of criminal history, the Court believes that the sentence avoids unwarranted sentencing disparities among similarly situated defendants. While the Court`s task, as a district court, is not to arrive at a reasonable sentence -- it is to come up with one that reflects the factors in 18 U.S.C. § 3553(a), see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court`s job is not to impose a reasonable sentence. Rather, a district court`s mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2).'' (citation omitted)) -- the Court believes that this sentence is reasonable, that it is more reasonable than a guideline sentence, and that it best reflects the factors in 18 U.S.C. § 3553(a). And perhaps most important in this calculation, the Court believes that this sentence is sufficient without being greater than necessary to comply with the purposes of punishment Congress set forth in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 (codified as amended in scattered sections of 18 U.S.C.). The Court doubts that the judicial system will see Chapman again, and the sentence is a severe one for any public official that dares to engage in similar conduct. The Court sentences Chapman to 70-months imprisonment for Counts 1 to 30, sentences which will run concurrently.

☒ The court makes the following recommendations to the Bureau of Prisons:

**Phoenix Federal Correctional Institution, Phoenix, Arizona, if eligible**
**The Court recommends the defendant participate in the Bureau of Prisons 500 hour drug and alcohol treatment program.**

☐ The defendant is remanded to the custody of the United States Marshal.
☒ The defendant shall surrender to the United States Marshal for this district:
  ☐ at  on
  ☒ as notified by the United States Marshal.
☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:
  ☐ before 2 p.m. on
  ☐ as notified by the United States Marshal
  ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:




Defendant delivered on _____ to
_____ at _____ with a Certified copy of this judgment.


_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

Defendant: **Laurie Chapman**
Case Number: **1:11CR00904-001JB**

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of **2 years** .

**A term of 2 years is imposed as to each of Counts 1 through 30; said terms shall run concurrently.**
The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.
The defendant shall not commit another federal, state, or local crime.
The defendant shall not unlawfully possess a controlled substance.
The defendant shall refrain from any unlawful use of a controlled substance.
The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

- ☐ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)
- ☒ The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable).
- ☒ The defendant shall cooperate in the collection of DNA as directed by statute. (Check, if applicable).
- ☐ The defendant shall register with the state, local, tribal and/or other appropriate sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)
- ☐ The defendant shall participate in an approved program for domestic violence. (Check, if applicable)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Criminal Monetary Penalties sheet of this judgment.
The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;
2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

Defendant: **Laurie Chapman**
Case Number: **1:11CR00904-001JB**

## SPECIAL CONDITIONS OF SUPERVISION

**The defendant must participate in and successfully complete an outpatient substance abuse treatment program, approved by the probation officer, which may include testing. The defendant is prohibited from obstructing or attempting to obstruct or tamper, in any fashion, with the collection, efficiency and accuracy of any substance abuse testing device or procedure. The defendant may be required to pay a portion of the cost of treatment and/or drug testing to be determined by the Probation Office.**

**The defendant must refrain from the use and possession of alcohol and other forms of intoxicants.**

**The defendant must participate in and successfully complete an outpatient mental health treatment program approved by the probation officer. The defendant may be required to pay a portion of the cost of this treatment to be determined by the Probation Officer.**

**The defendant will be prohibited from incurring new credit charges, opening additional lines of credit, or negotiating or consummating any financial contracts without prior approval of the probation officer.**

**The defendant must provide the probation officer access to any requested financial information, personal income tax returns, authorization for release of credit information, and other business financial information in which the defendant has a control or interest.**

**The Defendant shall refrain from having any contact or communication with Anthony Moya, d/b/a Omni Development, Inc.**

**The Defendant shall be restricted from engaging in employment, consulting, or any association with any financial institution or companies, or where she would manage fiduciary contracts.**

Defendant: **Laurie Chapman**
Case Number: **1:11CR00904-001JB**

# CRIMINAL MONETARY PENALTIES

The defendant must pay the following total criminal monetary penalties in accordance with the schedule of payments.

☐ The Court hereby remits the defendant's Special Penalty Assessment; the fee is waived and no payment is required.

| Totals: | Assessment | Fine | Restitution |
|---|---|---|---|
| | $3,000.00 | $0.00 | $0.00 |

## SCHEDULE OF PAYMENTS

Payments shall be applied in the following order (1) assessment; (2) restitution; (3) fine principal; (4) cost of prosecution; (5) interest; (6) penalties.

Payment of the total fine and other criminal monetary penalties shall be due as follows:

The defendant will receive credit for all payments previously made toward any criminal monetary penalties imposed.

A   ☒   In full immediately; or

B   ☐   $ immediately, balance due (see special instructions regarding payment of criminal monetary penalties).

**Special instructions regarding the payment of criminal monetary penalties: Criminal monetary penalties are to be made payable by cashier's check, bank or postal money order to the U.S. District Court Clerk, 333 Lomas Blvd. NW, Albuquerque, New Mexico 87102 unless otherwise noted by the court. Payments must include defendant's name, current address, case number and type of payment.**

Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalty payments, except those payments made through the Bureau of Prisons' Inmate Financial Responsibility Program, are to be made as directed by the court, the probation officer, or the United States attorney.